[Cite as *State v. Herring*, 2023-Ohio-4851.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | C.A. No.    22CA011899 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| JOHN HERRING | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | CASE No.    20CR102810 |

DECISION AND JOURNAL ENTRY

Dated: December 29, 2023

STEVENSON, Judge.

{¶1}    Defendant-Appellant, John Herring, appeals from the judgment of the Lorain County Court of Common Pleas.  This Court affirms.

I.

{¶2}    In April 2020, the police responded to a Lorain residence based on a report of a domestic violence in progress.  The first officer to arrive on scene observed a female limp to the door while holding the left side of her ribcage.  The officer identified the female as Mr. Herring's ex-girlfriend and learned that the residence belonged to her mother.  The ex-girlfriend and her mother were present at the scene along with a child the ex-girlfriend shared with Mr. Herring.

{¶3}    The ex-girlfriend and her mother informed the police that Mr. Herring had broken into the residence and had assaulted the ex-girlfriend.  Specifically, they told the police Mr. Herring had punched his ex-girlfriend, pushed her to the ground, kicked her, held a gun to her head, and threatened to kill her before fleeing in a gold Cadillac.  The ex-girlfriend provided the police with

a possible location where Mr. Herring might be headed. The officer on scene relayed that information to dispatch, and other officers immediately proceeded to that location.

{¶4} When officers arrived at the location the ex-girlfriend had provided, they found a gold Cadillac. The hood of the car was warm to the touch, and the police were later able to use surveillance footage to confirm that Mr. Herring had parked the car there before entering a locked apartment building. Although officers did not encounter Mr. Herring that day, they looked through the front windshield of the Cadillac and spotted suspected narcotics. The police obtained a search warrant for the car and discovered around 10 grams of fentanyl in the driver's side door and a handgun in the center console.

{¶5} In July 2020, Mr. Herring attempted to flee from the police while driving a different car. A chase ensued and ended when he struck a tree. The police had the car towed from the scene to a secure facility. When the police later searched the car, they uncovered fentanyl and cocaine.

{¶6} A grand jury issued a fifteen-count indictment against Mr. Herring. With respect to the April incident, he was charged with two counts of aggravated burglary, trafficking in a fentanyl-related compound, possession of a fentanyl-related compound, two counts of having a weapon under disability, improperly handling a firearm in a motor vehicle, possession of criminal tools, domestic violence, and aggravated menacing. Several of those counts also carried firearm specifications and repeat violent offender specifications. With respect to the July incident, Mr. Herring was charged with failure to comply, trafficking in cocaine, trafficking in a fentanyl-related compound, possession of cocaine, and possession of a fentanyl-related compound. The trial court agreed to sever the two sets of counts for trial and set the matter for trial on the July incident first.

{¶7} On the day of his scheduled trial, Mr. Herring pleaded no contest to the counts arising from the July incident. The trial court accepted his plea and held those counts for

sentencing. Mr. Herring later sought to withdraw his plea, but the trial court denied the two motions he filed. Thereafter, a jury trial on the April incident commenced.

{¶8}    A jury found Mr. Herring guilty on the counts arising from the April incident and the firearm specifications linked to those counts. The trial court then found him to be a repeat violent offender. The court merged several of his counts as allied offenses of similar import. It imposed consecutive prison terms on five of his counts and ordered his remaining terms to run concurrently with that sentence. Mr. Herring received a total sentence of 23.5 to 27.5 years in prison.

{¶9}    Mr. Herring now appeals from his convictions and raises sixteen assignments of error for review. For ease of analysis, we rearrange and consolidate several of the assignments of error.

II.

**ASSIGNMENT OF ERROR I**

**THE TRIAL ABUSED ITS DISCRETION WHEN IT GRANTED DEFENSE MOTION TO SEVER BUT THEN FAILED TO SEVER THE COUNTS IN LIEU OF BIFURCATION OF THE COUNTS[.]  (Sic.)**

{¶10}  In his first assignment of error, Mr. Herring argues the trial court abused its discretion when it failed to adhere to its own order, severing his two sets of counts. According to Mr. Herring, the April and July incidents "should have been handled as separate cases." He notes that the two matters "remained interdependent for the purpose of sentencing" despite the trial court's order to sever. Thus, he argues, the trial court mistakenly bifurcated his counts rather than severing them. For the following reasons, this Court rejects his argument.

{¶11}  Mr. Herring moved to sever his indictment pursuant to Crim.R. 14. That rule provides, in relevant part:

> If it appears that a defendant * * * is prejudiced by a joinder of offenses * * * in an indictment, * * * the court shall order an election or separate trial of counts * * * or provide such other relief as justice requires.

Crim.R. 14. The trial court agreed to sever Mr. Herring's two sets of counts and conduct separate trials. As noted, Mr. Herring then pleaded no contest to the counts arising from the July incident, and a jury trial was held on the counts arising from the April incident. Following his plea and the jury's guilty verdicts, the trial court sentenced him on all counts.

{¶12} By its plain language, Crim.R. 14 permits the severance of counts for purposes of trial, not sentencing. *See State v. Carter*, 9th Dist. Summit No. 30152, 2022-Ohio-3806, ¶ 13. Mr. Herring never argued in the lower court that the rule prohibited the trial court from conducting a single sentencing proceeding. Nor did he otherwise object to the severance procedure the trial court employed. "It is well-settled that this Court will not address arguments for the first time on appeal." *State v. Williamson*, 9th Dist. Summit No. 29935, 2022-Ohio-185, ¶ 31. To the extent Mr. Herring could have raised his argument via a claim of plain error, he has not done so. This Court will not construct an argument on his behalf. *See State v. Piatt*, 9th Dist. Wayne No. 19AP0023, 2020-Ohio-1177, ¶ 20. Because Mr. Herring has not preserved his argument for appeal, his first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

**THE TRIAL COURT ERRED WHEN IN (sic) HOLDING THE SUPPRESSION HEARING AND OTHER PRE TRIAL-HEARINGS OUTSIDE THE PRESENSCE (sic) OF THE DEFENDANT[.]**

{¶13} In his second assignment of error, Mr. Herring argues the trial court erred when it conducted proceedings outside his physical presence in the absence of a valid waiver. This Court rejects his argument.

{¶14} Defendants have a constitutional right to be physically present at all critical stages of their criminal proceedings. *State v. Grate*, 164 Ohio St.3d 9, 2020-Ohio-5584, ¶ 83; *State v. Corn*, 9th Dist. Lorain No. 20CA011686, 2021-Ohio-3444, ¶ 34. Similarly, Crim.R. 43(A) affords defendants the right to be physically present "at every stage of the criminal proceeding and trial * * *." A defendant may waive his right to be present by his own actions or through counsel. *See Grate* at ¶ 85; *State v. Brinkley*, 105 Ohio St.3d 231, 2005-Ohio-1507, ¶ 122. Even if a valid waiver does not appear in the record, however, a defendant's absence "does not necessarily result in prejudicial or constitutional error." *Grate* at ¶ 83. "'[T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only.'" *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, ¶ 90, quoting *Snyder v. Massachusetts*, 291 U.S. 97, 107-108 (1934). "Consequently, when a defendant is absent in violation of Crim.R. 43(A), any error can be harmless when no prejudice results." *Corn* at ¶ 35.

{¶15} The record reflects that Mr. Herring was physically present for his trial and sentencing. Due to the global pandemic, he appeared at all pretrial proceedings via remote simultaneous video conference. Mr. Herring claims the trial court violated Crim.R. 43(A) and his constitutional rights when it conducted the pretrial proceedings by video conference without securing a waiver of his right to be physically present. *See* Crim.R. 43(A)(3). According to Mr. Herring, his absence prejudiced his defense because he was unable to meaningfully participate in the proceedings and consult with his counsel.

{¶16} Assuming without deciding that each of Mr. Herring's pretrial hearings were critical stages of the proceedings such that he had both a constitutional and non-constitutional right to be physically present at each of them, the record does not support his claim that he was prejudiced by his appearance via video conference. Mr. Herring participated in multiple

conversations during the pretrial proceedings and spoke directly to the trial court on several occasions. Additionally, the trial court offered him the opportunity to consult privately with his counsel in a breakout room. Mr. Herring repeatedly took advantage of that opportunity, alerting the trial court that he needed to speak with his counsel. There is no indication in the record that he was denied the ability to meaningfully participate or to speak with his counsel. Even if the trial court neglected to secure his waiver in writing or on the record in open court, Mr. Herring has not shown that his absence resulted in any prejudice to his defense. *See Corn* at ¶ 35. As such, his second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

**THE TRIAL COURT ERRED WHEN IT PERMITTED WITNESSES TO TESTIFY VIRTUALLY IN VIOLATION OF HERRING'S RIGHT TO CONFRONTATION, AS GUARANTEED BY THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION.**

{¶17} In his third assignment of error, Mr. Herring argues the trial court violated his rights under the Confrontation Clause when it allowed two witnesses to testify remotely. According to Mr. Herring, the trial court permitted retired Detective Ignatius Sowa and Detective Christian Franco to testify in that manner. For the following reasons, we reject his argument.

{¶18} Mr. Herring has not provided any citation to the testimony of Detective Sowa. Further, the transcript of the proceedings is devoid of any testimony offered by him. Because Mr. Herring has not shown that Detective Sowa testified in this matter, we reject his argument insofar as it concerns Detective Sowa.

{¶19} Regarding Detective Franco, the record reflects that he testified in person at Mr. Herring's trial. He only testified remotely during a hearing on Mr. Herring's motion to suppress. In its entry denying Mr. Herring's motion to suppress, the trial court wrote the following: "Defendant's Motion to Suppress proceeded in a hearing on April 29, 2021 via Zoom *by agreement*

*due to the pandemic*." (Emphasis added.) Thus, Mr. Herring specifically agreed that the trial court could conduct his suppression hearing remotely. He cannot now take issue with that procedure. *See generally State v. Hendon*, 9th Dist. Summit No. 27951, 2016-Ohio-8137, ¶ 29. As such, his third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

**THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT APPLIED THE STANDARD ARBITRARILY TO HERRING'S MOTION TO WITHDRAW GUILTY PLEA.**

**{¶20}** In his fourth assignment of error, Mr. Herring argues the trial court abused its discretion when it denied his presentence motions to withdraw his plea. We do not agree.

**{¶21}** Crim.R. 32.1 provides for the withdrawal of a guilty or no contest plea prior to sentencing. Though a presentence motion to withdraw "'should be freely and liberally granted,'" there is no "'absolute right to withdraw a plea prior to sentencing.'" *State v. Youmans*, 9th Dist. Summit No. 29395, 2020-Ohio-1097, ¶ 8, quoting *State v. Xie*, 62 Ohio St.3d 521, 527 (1992). "The trial court must conduct a hearing to determine whether the defendant has demonstrated a reasonable and legitimate basis to withdraw the plea * * *." *State v. Braley*, 9th Dist. Summit No. 29834, 2022-Ohio-2489, ¶ 5. The nature and scope of that hearing is left to the sound discretion of the trial court. *Id.*

**{¶22}** "[A] defendant bears the burden of demonstrating that there is a reasonable and legitimate basis for withdrawing [his] plea." *State v. Troyer*, 9th Dist. Wayne No. 21AP0051, 2022-Ohio-1903, ¶ 7. The determination of whether to grant a presentence motion to withdraw a plea is entrusted to the discretion of the trial court, and this Court will review that decision for an abuse of discretion. *See Xie* at paragraph two of the syllabus. An abuse of discretion indicates

that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶23} A trial court does not abuse its discretion by denying a presentence motion to withdraw a guilty plea when:

> (1) the defendant is represented by competent counsel; (2) the trial court provides the defendant with a full hearing before entering the guilty plea; and (3) the trial court provides the defendant with a full hearing on the motion to withdraw the guilty plea, where the court considers the defendant's arguments in support of his motion to withdraw the guilty plea.

*State v. Pamer*, 9th Dist. Medina No. 04CA0027-M, 2004-Ohio-7190, ¶ 10. The trial court must take into consideration "'the facts and circumstances of each case.'" *State v. West*, 9th Dist. Lorain No. 04CA008554, 2005-Ohio-990, ¶ 22, quoting *Pamer* at ¶ 11. Additional factors the court may consider include:

> (1) prejudice that may be suffered by the State, (2) the adequacy of representation afforded to the defendant, (3) the character of the underlying plea hearing, (4) the scope of the trial court's consideration of the motion to withdraw, (5) the timing of the motion, (6) the reasons articulated in the motion to withdraw, (7) the defendant's understanding of the nature of the charges and the potential sentences, and (8) whether the defendant may have been not guilty of the offense or had a complete defense.

*Braley* at ¶ 7. "This Court has consistently noted that '[a] mere change of heart' does not justify the withdrawal of a guilty plea." *Troyer* at ¶ 8, quoting *State v. West*, 9th Dist. Summit No. 28668, 2017-Ohio-8474, ¶ 7.

{¶24} Mr. Herring filed two motions to withdraw his no contest plea (i.e., his plea to the July incident). In his first motion, he sought to withdraw his plea based on a perceived break in the chain of custody of evidence. He argued a break must have occurred because, tallying certain time estimations the State had provided, the officer tasked with following his car to the impound lot must have left the car unattended. In his second motion, he claimed newly discovered evidence

further supported his claim that there was a break in the chain of custody. Specifically, the State provided Mr. Herring with a dashcam recording that affirmatively established the time a tow truck arrived on scene to tow his car. Mr. Herring argued that he did not knowingly enter his plea because it was based on faulty advice he received from his counsel. Defense counsel advised the trial court that he had engaged in malpractice by not sufficiently investigating the chain of custody issue before advising Mr. Herring to plead no contest.

{¶25} Mr. Herring does not dispute the fact that he received a full hearing on his plea. The trial court also conducted two full hearings on his motions to withdraw and allowed the parties to call witnesses to testify about the chain of custody issue. Further, Mr. Herring was represented by counsel at both his plea hearing and his motion hearings. Mr. Herring nevertheless argues that the trial court failed to appropriately consider his motions to withdraw because the record supports the conclusion that he had a reasonable and legitimate basis for withdrawing his plea (i.e., that he did not have certain critical information at the time he entered it). He argues that, once he uncovered a valid defense to his charges, he ought to have been permitted to withdraw his plea and fully pursue that defense at trial.

{¶26} The trial court acknowledged that presentence motions to withdraw are to be freely and liberally granted. Even so, the court denied Mr. Herring's motions based on the facts and circumstances before it. The court noted that the State had been prepared to proceed on the day of trial, jurors had been called to serve, and witnesses had been subpoenaed to testify. Mr. Herring was aware of a potential issue with the chain of custody of evidence at that time but nevertheless chose to enter a plea. Moreover, the trial court found that the additional information the defense had uncovered since that time did not definitively establish a break in the chain of custody. The

court found that Mr. Herring's attempt to withdraw his plea amounted to a change of heart. Accordingly, it denied his motions.

{¶27} Having reviewed the record, we cannot conclude the trial court abused its discretion when it denied Mr. Herring's presentence motions to withdraw his pleas. *See Xie*, 62 Ohio St.3d at 527. As noted, Mr. Herring had a full plea hearing, two full hearings on his motions to withdraw, and he was represented by counsel at each hearing. *See Pamer*, 2004-Ohio-7190, at ¶ 10. He faced serious charges and chose to plead to the July incident to secure a more lenient sentence on those counts. He gave no indication that he did not understand the implications of his plea. *See Brayley*, 2022-Ohio-2489, at ¶ 7. Because he waited until the day of his scheduled trial to enter his plea, allowing him to withdraw it would have resulted in a duplicative expenditure of judicial resources. *See id.* Further, the arguments and evidence he presented in support of his motions to withdraw did not establish that, were he to go to trial, Mr. Herring would have had a complete defense. *See id.* Based on all the facts and circumstances before the trial court, we cannot say its decision to deny Mr. Herring's motions was unreasonable, arbitrary, or unconscionable. *See Blakemore*, 5 Ohio St.3d at 219. Accordingly, Mr. Herring's fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR VI

**THE TRIAL COURT ERRED WHEN IT ADMITTED TESTIMONIAL HEARSAY EVIDENCE IN VIOLATION OF APPELLANT'S CONFRONTATION CLAUSE RIGHTS[.]**

{¶28} In his sixth assignment of error, Mr. Herring argues the trial court erred when it admitted statements made by his ex-girlfriend and her mother through the testimony of an officer. Specifically, he argues that the admission of those statements violated his rights under the Confrontation Clause. For the following reasons, we reject his argument.

**{¶29}** "The question of whether statements are admissible under the Rules of Evidence and the question of whether they are admissible under the Confrontation Clause are separate inquiries." *State v. Henning*, 9th Dist. Summit No. 29128, 2019-Ohio-2200, ¶ 17. "The Confrontation Clause is implicated by the admission of out-of-court statements that are testimonial in nature when the declarant does not testify in the proceeding." *State v. Doss*, 9th Dist. Wayne No. 18AP0027, 2019-Ohio-436, ¶ 5. "[T]estimonial statements are those made for 'a primary purpose of creating an out-of-court substitute for trial testimony.'" *State v. Tench*, 156 Ohio St.3d 85, 2018-Ohio-5205, ¶ 212, quoting *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, ¶ 40. "In determining whether a statement is testimonial * * *, courts should focus on the expectation of the declarant at the time of making the statement * * *." *State v. Stahl*, 111 Ohio St.3d 186, 2006-Ohio-5482, paragraph two of the syllabus. Relevant factors include the amount of time between a declarant's statement and the triggering event, the presence of an ongoing emergency, the nature of the questions posed to a declarant and the responses received, and the level of formality present in the questioning of the declarant. *Doss*, 2019-Ohio-436, at ¶ 7, citing *Davis v. Washington*, 547 U.S. 813, 827, 829-830 (2006). Particularly "in domestic disputes, '[o]fficers called to investigate * * * need to know whom they are dealing with in order to assess the situation, the threat to their own safety, and possible danger to the potential victim.'" *Doss* at ¶ 7, quoting *Davis* at 832. Thus, "inquiries made at the scene in the form of 'initial inquiries' may often produce nontestimonial statements." *Doss* at ¶ 7, quoting *Davis* at 832.

**{¶30}** "We review the trial court's admission of evidence over a Confrontation Clause objection de novo." *State v. Thomas*, 9th Dist. Summit No. 27580, 2015-Ohio-5247, ¶ 14. "When applying the de novo standard of review, this Court gives no deference to the trial court's legal determinations." *State v. West*, 9th Dist. Lorain No. 04CA008554, 2005-Ohio-990, ¶ 33.

{¶31} Neither Mr. Herring's ex-girlfriend nor her mother testified at trial. Instead, their statements were admitted through the testimony of Officer Tiffany Gentry. Officer Gentry testified that the Lorain Police Department received a call at 8:18 a.m. about a domestic violence in progress at the home of the ex-girlfriend's mother. Officer Genty arrived on scene at 8:21 a.m. She was greeted at the door by the ex-girlfriend, who was limping and holding the left side of her ribcage. Officer Gentry saw fresh bruising on the ex-girlfriend's body. She described the ex-girlfriend and her mother as "very upset." She specified that both had tears in their eyes and the ex-girlfriend's hair appeared disheveled, as if she had just been involved in an affray. She testified that both women immediately began "trying to get out as much information as they possibly could as to who did it, which way he was going, and why it happened." They said Mr. Herring had broken into the house with a gun. They said he had punched the ex-girlfriend, pushed her to the ground, kicked her, and held a gun to her head while threatening to kill her. They said Mr. Herring then fled in a gold Cadillac. The ex-girlfriend told Officer Gentry that she thought Mr. Herring was heading to an apartment building and provided the officer with that address. Officer Gentry relayed that information to other officers who immediately drove to that location to try to intercept Mr. Herring.

{¶32} Mr. Herring argues the trial court violated his rights under the Confrontation Clause when it admitted the statements of his ex-girlfriend and her mother through Officer Gentry. He argues that the trial court failed to analyze whether those statements were testimonial or nontestimonial before admitting them. According to Mr. Herring, the statements were testimonial because Officer Gentry elicited them after the alleged incident of domestic violence had ended and there was no ongoing emergency.

{¶33} The record reflects that Mr. Herring repeatedly objected to the admission of his ex-girlfriend's and her mother's statements because the women were not present to testify, and thus, not subject to cross-examination. The trial court interpreted his objections as objections to the introduction of hearsay and overruled them on that basis. Mr. Herring never cited the Confrontation Clause, argued the statements were testimonial, or suggested the trial court's analysis was incomplete. Given the limited argument he presented to the lower court, we question whether he has preserved his Confrontation Clause argument for appeal. *See State v. Yates*, 9th Dist. Wayne No. 19AP0061, 2020-Ohio-6991, ¶ 24 (Confrontation Clause argument forfeited where defendant failed to object to admission of evidence on that basis). Even assuming his limited argument preserved this issue for appeal, however, we nevertheless reject his assigned error.

{¶34} As noted, initial inquiries conducted in domestic disputes often produce nontestimonial statements as officers work to assess the situation and identify any immediate danger to themselves, the victim, and the public. *See Doss*, 2019-Ohio-436, at ¶ 7, quoting *Davis*, 547 U.S. at 832. Officer Gentry arrived on scene only three minutes after the police department received the call about a domestic violence in progress. She observed the ex-girlfriend and the mother in a state of distress and testified that both immediately began telling her what happened. Accordingly, their statements were made in close proximity to the event, they occurred while both women were still experiencing the stress of that event, and they were not the result of any formal interrogation. *See Doss* at ¶ 11. Officer Gentry learned that Mr. Herring had a gun and had used it to threaten the ex-girlfriend's life before fleeing. She immediately shared that information with other officers who attempted to apprehend Mr. Herring. Because Mr. Herring posed a danger to responding officers and the public at that time, the record supports the conclusion that there was

an ongoing emergency. *See State v. Myers*, 9th Dist. Wayne No. 19AP0045, 2020-Ohio-6792, ¶ 15-16. Mr. Herring has not shown that the trial court admitted testimonial statements. Thus, his sixth assignment of error is overruled.

## ASSIGNMENT OF ERROR VII

**THE TRIAL COURT ERRED IN PROVIDING THE JURY WITH AN EXPLANATION OF HEARSAY EXCEPTION AND RATIONALE BEHIND THE EXCEPTION AS THE EXPLANATION REQUESTED THAT THE JURY MAKE A THRESHOLD DETERMINATION AS TO ADMISSIBILITY AND IMPROPERLY BOLSTERED THE CREDIBILITY OF INADMISSIBLE HEARSAY EVIDENCE[.]**

**{¶35}** In his seventh assignment of error, Mr. Herring argues the trial court erred when it addressed the jury and explained the conditions under which excited utterances are admissible. Upon review, we reject his argument.

**{¶36}** "Admissibility determinations under the evidentiary rules fall within the sound discretion of the trial court." *State v. Clark*, 9th Dist. Wayne No. 18AP0056, 2020-Ohio-1178, ¶ 10. Trial courts may admit out-of-court declarations as excited utterances if they relate "to a startling event or condition" and were "made while the declarant was under the stress of excitement caused by the event or condition." Evid.R. 803(2). Declarations admitted as excited utterances are deemed reliable. *State v. Franklin*, 9th Dist. Summit No. 28983, 2018-Ohio-4687, ¶ 9, quoting *State v. Rodriguez*, 9th Dist. Lorain No. 89CA004507, 1989 WL 109141, *2 (Sept. 20, 1989). "The credibility and weight of the declarations will, of course, still be judged by the fact-finder." *State v. Wallace*, 37 Ohio St.3d 87, 95 (1988).

**{¶37}** Mr. Herring repeatedly objected when Officer Gentry testified about out-of-court statements made by his ex-girlfriend and her mother. During one such objection, the trial court addressed the jury as follows:

Ladies and gentlemen, there is an exception to the hearsay rule called an excited utterance, that if a person is in a state of excitement, due to a recent event, the likelihood that the information that's being provided could be reliable is recognized by law, that an excited utterance that is something that is considered an exception to the hearsay rule and, therefore, can be admitted for the truth of what was stated during that excited utterance, assuming that you've -- that you, as a jury, find that she was, indeed, excited and that the utterance came as a result of that excited state that she was in.

So the objection is overruled. And I hope that explains why this is not considered hearsay.

Mr. Herring argues the trial court erred in its explanation to the jury because the court: (1) improperly tasked the jury with deciding the admissibility of the statements made by the ex-girlfriend and her mother; (2) failed to properly explain the admissibility requirements for the statements; and (3) bolstered the statements by telling the jury their reliability was "recognized by law."

{¶38} Mr. Herring did not object when the trial court addressed the jury. Nor did he otherwise take issue with the trial court's statements to the jury in the lower court. By failing to do so, he forfeited his arguments for appeal. *See State v. McCallum*, 9th Dist. No. Medina No. 08CA0037-M, 2009-Ohio-1424, ¶ 19 ("A defendant forfeits appellate review of an alleged error at trial if [he] fails to contemporaneously object to that error at trial."). Mr. Herring has not argued plain error, and this Court will not construct an argument on his behalf. *See Piatt*, 2020-Ohio-1177, at ¶ 20. Accordingly, his seventh assignment of error is overruled.

### ASSIGNMENT OF ERROR IX

**THE TRIAL COURT ERRED WHEN IT FAILED TO ENFORCE A FORMERLY IMPOSED ORDER, AND DENIED DEFENSE COUNSEL'S MOTION FOR A MISTRIAL FOLLOWING ADMISSION OF IMPERMISSIBLE OTHER ACTS EVIDENCE[.]**

### ASSIGNMENT OF ERROR X

**THE STATE ENGAGED IN PROSECUTORIAL MISCONDUCT FOR PLAYING PROHIBITED PORTIONS OF MR. HERRING'S JAIL CALLS FOR THE JURY, CONTRARY TO A PRIOR ORDER BY THE COURT.**

**{¶39}** In his ninth assignment of error, Mr. Herring argues the trial court erred when it refused to declare a mistrial. He claims he was denied a fair trial because the prosecutor introduced impermissible other acts evidence through a jail call. In his tenth assignment of error, he argues that the prosecutor's actions amounted to prosecutorial misconduct. For the following reasons, we reject his assignments of error.

**{¶40}** As previously noted, the trial court severed Mr. Herring's two sets of counts for trial. He pleaded no contest to the July incident and went to trial on the April incident. The parties agreed to omit any references to the July incident at the trial on the April incident. The trial court also entered an order to that effect.

**{¶41}** During its case-in-chief, the State introduced several jail calls made by Mr. Herring through the testimony of Detective Franco. After the State played the fourth jail call and the detective began to testify about its contents, defense counsel requested a sidebar. He argued that it was impossible to tell from the context of the jail call whether Mr. Herring was referring to the April incident or the July incident. Because the court had ordered the July incident to be kept from the jury, defense counsel asked the court to instruct the jury to disregard the fourth jail call. The trial court agreed to do so and immediately issued an instruction to that effect. Mr. Herring later moved for a mistrial, arguing that the court's instruction had been insufficient to cure the prejudice he sustained when the fourth jail call was played. The trial court refused to declare a mistrial.

**{¶42}** Mr. Herring argues a mistrial was warranted and prosecutorial misconduct occurred when the State played the fourth jail call. He claims its contents deprived him of a fair trial, and the State introduced it in violation of the court's order not to present evidence related to the July

incident. Upon review of the record, however, this Court cannot address his arguments on the merits. The record contains a CD exhibit of the jail calls the State played at trial. Yet, the CD does not include the fourth jail call. At the conclusion of trial, the prosecutor notified the trial court that the State had redacted the CD to comply with the court's ruling. Relevant to these assignments of error, the prosecutor removed the fourth jail call from the CD. Mr. Herring indicated he had no objection to that redaction, and the trial court admitted the redacted exhibit into evidence. Because only the redacted CD was admitted into evidence and included in the record, the record does not contain the fourth jail call. Thus, this Court is unable to review its contents.

{¶43} To secure a mistrial or successfully argue prosecutorial misconduct, a defendant must demonstrate that the error alleged to have occurred actually deprived him of a fair trial. *See State v. Dukes*, 9th Dist. Summit No. 30366, 2023-Ohio-2863, ¶ 24; *State v. Taylor*, 9th Dist. Summit No. 29058, 2019-Ohio-3253, ¶ 19. Without being able to review the contents of the fourth jail call, this Court is unable to assess its impact, if any, on the trial. As the appellant, it was Mr. Herring's duty to ensure the record contained any items necessary to facilitate appellate review. *See State v. Filip*, 9th Dist. Medina No. 16CA0049-M, 2017-Ohio-5622, ¶ 16; *State v. Figueroa*, 9th Dist. Lorain No. 15CA010856, 2016-Ohio-6969, ¶ 8. Because he has failed to meet his burden of affirmatively demonstrating error on appeal, his ninth and tenth assignments of error are overruled.

**ASSIGNMENT OF ERROR V**

**TRIAL COUNSEL'S FAILURE TO TIMELY OBJECT TO HEARSAY EVIDENCE WAS SO DEFICIENT THAT HERRING WAS DENIED HIS SIXTH AMENDMENT RIGHT TO COUNSEL.**

**ASSIGNMENT OF ERROR XII**

**TRIAL COUNSEL'S PERFORMANCE WAS INEFFECTIVE FOR FAILING TO CONTEMPORANEOUSLY OBJECT TO IMPROPER VOICE IDENTIFICATION BY DETECTIVE FRANCO.**

**{¶44}** In his fifth and twelfth assignments of error, Mr. Herring argues that he received ineffective assistance of counsel. He argues he sustained prejudice when his counsel failed to timely object to the introduction of hearsay and voice identification testimony. We reject his arguments.

**{¶45}** To prove ineffective assistance of counsel, Mr. Herring must establish that: (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's performance is deficient if it falls "below an objective standard of reasonable representation." *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland* at 687. To establish resulting prejudice, Mr. Herring must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Bradley* at paragraph three of the syllabus. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland* at 691.

Hearsay Objection

**{¶46}** Mr. Herring acknowledges that his counsel objected when Officer Gentry testified to the statements made by his ex-girlfriend and her mother. He takes issue with his counsel's failure to object sooner. According to Mr. Herring, by the time his counsel objected, Officer Gentry had already testified that his ex-girlfriend and her mother said the ex-girlfriend had been injured in a domestic violence incident. He claims counsel's objection was too late because it came after the jury heard that testimony. Moreover, he notes that counsel failed to request a curative instruction. Mr. Herring argues he was prejudiced by his counsel's failure to object sooner because the statements Officer Gentry shared were "the only evidence of several of the counts and [were] excludable by law."

**{¶47}** Upon review, Mr. Herring has not established that, had his counsel objected sooner, there is a reasonable probability the result of his trial would have been different. *See Bradley* at paragraph three of the syllabus. The trial court admitted the out-of-court statements of the ex-girlfriend and her mother as excited utterances. Mr. Herring has made no attempt to explain why their statements did not qualify as such under the circumstances. He has not set forth any law or argument regarding the application of Evid.R. 803(2). His prejudice argument amounts to a singular, blanket assertion that the statements were "excludable by law." If the statements were admissible, however, then the timing of defense counsel's objections to their admission was inapposite. It is Mr. Herring's burden to establish prejudice. *See Strickland*, 466 U.S. at 687. This Court will not construct an argument on his behalf. *See State v. Yatson*, 9th Dist. Lorain No. 20CA011658, 2022-Ohio-2621, ¶ 79. Because he has not met his burden, this Court rejects his argument regarding counsel's failure to timely object to alleged hearsay. Mr. Herring's fifth assignment of error is overruled.

Voice Identification Objection

**{¶48}** Mr. Herring also argues he received ineffective assistance of counsel because his counsel did not object when Detective Franco identified him by voice in the jail calls the State played at trial. According to Mr. Herring, the State failed to establish on the record that the detective was sufficiently familiar with his voice to be able to identify it. Thus, he argues that his counsel should have objected to the State's failure to comply with Evid.R. 901(B)(5).

**{¶49}** Authentication or identification is "a condition precedent to admissibility [and] is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(A). "The threshold for demonstrating authentication is low, and a proponent need only offer evidence demonstrating a reasonable likelihood that the evidence is authentic." *State v. Moorer*, 9th Dist. Summit No. 27685, 2016-Ohio-7679, ¶ 6. Evid.R. 901(B)(5) provides that any individual may identify a voice "by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker."

**{¶50}** Detective Franco testified that, while Mr. Herring was incarcerated at the jail, he made several phone calls. The detective explained that he knew Mr. Herring had made the calls because each inmate receives a unique pin number to use in connection with phone calls and must submit a recording of their voice. When an inmate initiates a call using his pin, he is asked to repeat a statement and "some kind of voice recognition software" compares that recording with the voice recording on file for the inmate. Detective Franco also testified that he recognized the voice on the jail calls as Mr. Herring's voice. Additionally, Mr. Herring identified himself as "John Herring" in one of the jail calls and, in other calls, he discussed being charged with breaking into the home of a female's mother. While he did not reference the female by name or refer to her

as his ex-girlfriend, he recounted how he pushed the female to the ground and kicked her while her mother attempted to stop him.

**{¶51}** Upon review, we reject Mr. Herring's claim of ineffective assistance of counsel. As noted, "[t]he threshold for demonstrating authentication is low, and a proponent need only offer evidence demonstrating a reasonable likelihood that the evidence is authentic." *Moorer* at ¶ 6. Defense counsel may well have made a strategical decision not to object to Detective Foster's voice identification testimony, given that such an objection was unlikely to succeed. *See State v. Lee*, 9th Dist. Summit No. 29597, 2020-Ohio-4970, ¶ 31. "This Court has consistently held that trial counsel's failure to make objections is within the realm of trial tactics and does not establish ineffective assistance of counsel." *State v. Smith*, 9th Dist. Wayne No. 12CA0060, 2013-Ohio-3868, ¶ 24, quoting *State v. Guenther*, 9th Dist. Lorain No. 05CA008663, 2006-Ohio-767, ¶ 74. Accordingly, Mr. Herring's twelfth assignment of error is overruled.

## ASSIGNMENT OF ERROR VIII

**THE TESTIMONY OF LAY WITNESSES TIFFANY GENTRY AND DETECTIVE FRANCO IMPROPERLY INVADED THE PROVINCE OF THE JURY BY TESTIFYING THE ULTIMATE ISSUE OF FACT. (Sic.)**

**{¶52}** In his eighth assignment of error, Mr. Herring argues that he was denied a fair trial when Officer Gentry and Detective Franco offered testimony that improperly invaded the province of the jury. For the following reasons, we reject his argument.

<u>Officer Gentry's Testimony</u>

**{¶53}** Officer Gentry testified that, as the responding officer, she took photographs of the ex-girlfriend. The prosecutor led the officer through the photographs she took and asked why she took each one. Officer Gentry testified that she took a photograph of the ex-girlfriend's face because, "during her statement, she was pushed to the ground and her head hit the frame of the

door." She testified that she took a different photograph "because there was a visible injury around her back rib area that appeared to be freshly bruised." She began to testify that she took a third photograph "after the assault occurred." At that point, Mr. Herring objected. He informed the court that he objected to Officer Gentry including in her testimony any "mention of what was in [the ex-girlfriend's] statement." The trial court overruled his objection, noting that the State had asked Officer Gentry to describe her reasons for taking each photograph. The trial court indicated that her testimony about the photographs would only be admitted for the limited purpose of explaining her actions.

{¶54} Mr. Herring argues that Officer Gentry's testimony about the photographs was improper because it included conclusions about the ultimate issue at trial (i.e., whether his ex-girlfriend had been assaulted). He notes that the officer lacked any firsthand knowledge about the alleged assault because she was not there when it occurred. Because it was the jury's function to determine whether an assault occurred, Mr. Herring argues, Officer Gentry's testimony was improper.

{¶55} Upon review, this Court rejects Mr. Herring's argument. The record reflects that he did not object to Officer Gentry's testimony on the basis that it touched upon the ultimate issue at trial. Moreover, the trial court specifically indicated that it was admitting the testimony for the limited purpose of explaining the officer's actions in photographing the ex-girlfriend. Mr. Herring has not argued that the trial court committed plain error when it permitted Officer Gentry to testify in the foregoing manner. Nor has he explained how he was prejudiced by the admission of her testimony in light of the limited purpose for which it was admitted. This Court will not construct an argument on his behalf. *See Piatt*, 2020-Ohio-1177, at ¶ 20. Accordingly, Mr. Herring's eighth assignment of error is overruled insofar as it concerns Officer Gentry.

Detective Franco's Testimony

**{¶56}** As previously noted, the State introduced several jail calls during the testimony of Detective Franco. In one of the calls, Mr. Herring recounted how he "mugged" a female to the ground and kicked her on the ground while the female's mother attempted to intervene. After the State played that call, the following exchange took place:

[THE PROSECUTOR]: Does the context of those statements match up with the incident from April 19th as far as you can tell?

[DETECTIVE FRANCO]: Yes, they do.

According to Mr. Herring, Detective Franco should not have been allowed to offer his own conclusion about the meaning of the statements included in the call.

**{¶57}** Mr. Herring acknowledges that he did not object to Detective Franco's testimony. Nor has he argued plain error on appeal. Again, this Court will not construct an argument on his behalf. *See id.* Because Mr. Herring forfeited his argument and has not developed a claim of plain error on appeal, his eighth assignment of error is overruled insofar as it concerns Detective Franco.

**ASSIGNMENT OF ERROR XI**

**TRIAL COURT ERRED FOR OVERRULING COUNSEL'S OBJECTION TO IMPROPER VIDEO IDENTIFICATION EVIDENCE[.]**

**{¶58}** In his eleventh assignment of error, Mr. Herring argues the trial court erred when it permitted Detective Franco to identify him in surveillance footage the State played at trial. Upon review, we reject his argument.

**{¶59}** "For reversible error to exist, there must be both error and resulting prejudice." *State v. Ross*, 9th Dist. Lorain No. 21CA011729, 2023-Ohio-1185, ¶ 25. Error in the admission of testimony will not result in a reversal if the record reflects the error was harmless beyond a reasonable doubt. *See State v. Boaston*, 160 Ohio St.3d 46, 2020-Ohio-1061, ¶ 60. The error must have impacted the verdict. *See State v. Ali*, 9th Dist. Summit No. 29611, 2021-Ohio-4596, ¶ 10.

{¶60} Mr. Herring's ex-girlfriend told the police where Mr. Herring might be headed after he fled her mother's residence. Specifically, she gave the police the address of an apartment building. The police were able to recover surveillance footage from that apartment building. The footage showed a gold Cadillac arriving in the parking lot and parking. It also showed a large black male walking from the driver's door of the Cadillac into the apartment building. The footage clearly depicted the man in a front facing view. At trial, Detective Franco identified the man as Mr. Herring. Mr. Herring objected to Detective Franco's identification, but the trial court overruled his objection.

{¶61} Mr. Herring claims the trial court erred when it overruled his objection because the State failed to show Detective Franco was sufficiently familiar with his appearance to be able to identify him. He notes that Detective Franco was not tendered as an expert in visual comparison. According to Mr. Herring, the detective's visual identification invaded the province of the jury and deprived him of a fair trial.

{¶62} Assuming without deciding that the trial court erred by allowing Detective Franco to identify Mr. Herring in the surveillance footage, Mr. Herring has not demonstrated resulting prejudice. *See Ross*, 2023-Ohio-1185, at ¶ 25. The jury was able to view the man in the surveillance footage and compare his appearance with Mr. Herring's appearance at trial. Moreover, the jury heard other evidence connecting Mr. Herring with the gold Cadillac the police found at the apartment building. The ex-girlfriend told the police Mr. Herring fled in a gold Cadillac and might be heading to that location. The car was warm to the touch when the police arrived, and a search of the car uncovered a printout of an after-visit doctor's summary for Mr. Herring. Mr. Herring has not shown that, but for Detective Franco's testimony, the jury would not

otherwise have concluded that he was the man in the surveillance footage. Accordingly, his eleventh assignment of error is overruled.

**ASSIGNMENT OF ERROR XIII**

**THE STATE ENGAGED IN PROSECUTORIAL MISCONDUCT WHEN IT ABUSED PROCESS TO SUBPOENA WITNESSES TO HIS OFFICE FOR TRIAL PREPARATION[.]**

**{¶63}** In his thirteenth assignment of error, Mr. Herring argues that prosecutorial misconduct deprived him of a fair trial. For the following reasons, we reject his argument.

**{¶64}** "[A] judgment may only be reversed for prosecutorial misconduct when the improper conduct deprives the defendant of a fair trial." *State v. Knight*, 9th Dist. Lorain No. 03CA008239, 2004-Ohio-1227, ¶ 6. "The defendant must show that, but for the prosecutor's misconduct, the trier of fact would not have convicted him." *State v. Dukles*, 9th Dist. Medina No. 12CA0100-M, 2013-Ohio-5263, ¶ 33. Because the "touchstone of the analysis" is the fairness of the trial and not the culpability of the prosecutor, *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, ¶ 140, "[a] reviewing court [must] consider the trial record as a whole, and [must] ignore harmless errors 'including most constitutional violations,'" *Knight* at ¶ 6, quoting *State v. Lott*, 51 Ohio St.3d 160, 166 (1990).

**{¶65}** Mr. Herring argues the prosecutor engaged in misconduct when he subpoenaed material witnesses to appear at his office to conduct trial preparation. He claims the prosecutor's actions amounted to "an invalid exercise of the compulsory process which was ignored by the subjects of the subpoena." According to Mr. Herring, he was prejudiced by the prosecutor's misuse of the compulsory process because it resulted in the absence of material witnesses at trial.

**{¶66}** Upon review, this Court rejects Mr. Herring's argument. Mr. Herring has not set forth the elements of prosecutorial misconduct or analyzed the prosecutor's conduct in light of the

other evidence presented at trial. Nor has he identified the material witnesses whose absence the State allegedly caused. This Court will not construct an argument on his behalf. *See Piatt*, 2020-Ohio-1177, at ¶ 20. Further, even setting aside the procedural deficiencies in his brief, Mr. Herring has not established that he was prejudiced by the prosecutor's alleged misconduct. *See Knight* at ¶ 6. Presumably, the material witnesses to whom Mr. Herring is referring are his ex-girlfriend and her mother. Neither woman appeared to testify at trial. The record reflects, however, that the trial court had authorities contact both women during the trial and offered to have them brought to the courtroom so they might testify. Mr. Herring notified the court that he did not wish to proceed with having the ex-girlfriend and her mother brought to court. Thus, he specifically declined the opportunity to have the women testify. Mr. Herring cannot now argue that he was prejudiced by the absence of those witnesses. His thirteenth assignment of error is overruled.

**ASSIGNMENT OF ERROR XV**

> **THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO PROVE EACH AND EVERY ELEMENT OF THE OFFENSE BEYOND A REASONABLE DOUBT.**

**{¶67}** In his fifteenth assignment of error, Mr. Herring argues that his convictions are based on insufficient evidence. We do not agree.

**{¶68}** Whether a conviction is supported by sufficient evidence is a question of law, which this Court reviews de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "A challenge to the sufficiency of the evidence concerns the State's burden of production and is, in essence, a test of adequacy." *State v. Wilk*, 9th Dist. Medina No. 22CA0008-M, 2023-Ohio-112, ¶ 9, citing *In re R.H.*, 9th Dist. Summit No. 28319, 2017-Ohio-7852, ¶ 25; *Thompkins* at 386. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a

reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. This Court does not, however, "resolve evidentiary conflicts or assess the credibility of witnesses[] because these functions belong to the trier of fact." *State v. Hall*, 9th Dist. Summit No. 27827, 2017-Ohio-73, ¶ 10.

{¶69} Mr. Herring has not set forth the elements of any of his convictions. Nor has he analyzed the evidence with respect to any of his individual convictions. Instead, he broadly asserts that his convictions are based on insufficient evidence because the only evidence the State introduced to support them was hearsay testimony from Officer Gentry. According to Mr. Herring, that testimony "was admitted without any finding to support its admissibility via a hearsay exception."

{¶70} Even assuming the State relied on hearsay to convict Mr. Herring, that fact alone would not result in a reversal of his convictions. "This Court must consider all of the evidence presented by the State when analyzing the sufficiency of the evidence, regardless of whether the evidence was properly admitted." *State v. Kerik*, 9th Dist. Summit No. 30539, 2023-Ohio-3455, ¶ 15. Officer Gentry testified that the ex-girlfriend and her mother said Mr. Herring broke into the mother's house, assaulted the ex-girlfriend, held a gun to her head, and threatened to kill her. The State presented evidence that officers searched the car Mr. Herring had been driving and found a gun and around 10 grams of fentanyl. Given the limited nature of Mr. Herring's argument on appeal, we decline to conduct a more exhaustive review of the sufficiency of the evidence. Viewing the evidence in a light most favorable to the State, the jury reasonably could have concluded that the State proved his convictions beyond a reasonable doubt. *See Jenks* at paragraph two of the syllabus. Accordingly, his fifteenth assignment of error is overruled.

## ASSIGNMENT OF ERROR XIV

**HERRING'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

{¶71} In his fourteenth assignment of error, Mr. Herring argues that his convictions are against the manifest weight of the evidence. We do not agree.

{¶72} When deciding whether a criminal conviction is against the manifest weight of the evidence, this Court must consider the entire record and "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). A reversal on a manifest weight of the evidence challenge is reserved for exceptional cases where the evidence weighs heavily against the conviction. *Thompkins*, 78 Ohio St.3d at 387.

{¶73} Mr. Herring argues his convictions are against the manifest weight of the evidence because they are based on inadmissible hearsay (i.e., the statements of his ex-girlfriend and her mother). He argues that the pictures Officer Gentry took of his ex-girlfriend's alleged injuries did not depict any injuries. Nor was there any physical evidence to suggest that he broke into the mother's home, such as a damaged door. Regarding the gun found in the gold Cadillac, Mr. Herring argues that there was no evidence he ever touched the gun or was aware of its existence. Regarding the drugs found in the car, Mr. Herring argues that there was no evidence he owned or occupied the car.

{¶74} As previously noted, Officer Gentry testified to statements made by the ex-girlfriend and her mother. Both women told the officer that Mr. Herring had broken into the mother's residence, punched the ex-girlfriend, pushed her to the ground, kicked her, held a gun to

her head, and threatened to kill her before fleeing in a gold Cadillac. Officer Gentry testified that both women appeared to be very upset and had tears in their eyes. She also testified that she observed fresh bruising on the ex-girlfriend, saw her limping, and felt that her hair looked as if she had just been involved in an affray.

**{¶75}** As part of its case-in-chief, the State played a jail call that Mr. Herring placed several months after the April incident. On the call, Mr. Herring spoke about a female and her mother. He said he "mugged [the female's] stupid ass to the ground" and kicked her when she continued talking. When the female's mother attempted to stop him, he said he "pushed the old bitch back" because he "was already in go mode."

**{¶76}** Both the ex-girlfriend and her mother told the police that Mr. Herring fled in a gold Cadillac. Surveillance footage captured a gold Cadillac arriving at the apartment building where the ex-girlfriend directed the police. The car arrived within ten minutes of the domestic violence call the police received regarding this incident. The surveillance footage captured a black male emerging from the car and walking into the apartment building. Detective Franco identified the male as Mr. Herring, and the police found a medical document belonging to Mr. Herring inside the car. They also found a gun in the center console of the car and narcotics in the driver's side door in plain view.

**{¶77}** Having reviewed the record, we cannot conclude the jury clearly lost its way and created a manifest miscarriage of justice when it found Mr. Herring guilty. *See Otten*, 33 Ohio App.3d at 340. Although the ex-girlfriend and her mother did not testify, the trial court admitted their statements as excited utterances. Further, Officer Gentry described their appearance on her arrival and the injuries she observed. To the extent the pictures she took were blurry or did not appear to capture those injuries, the jury was in the best position to assess her credibility. *See State*

*v. Queen*, 9th Dist. Summit No. 30138, 2023-Ohio-594, ¶ 12. The jury heard Mr. Herring describe how he pushed a female to the ground and kicked her while her mother tried to stop him. The jury reasonably could have concluded that Mr. Herring was referring to his ex-girlfriend.

**{¶78}** Regarding the evidence found inside the gold Cadillac, the jury heard testimony that the police found a medical document belonging to Mr. Herring inside the car. The jury also watched a surveillance video which, according to the State, showed Mr. Herring emerging from the car and walking inside an apartment building. Given the timing of his arrival, the ex-girlfriend's statement that he held a gun to her head, and the fact that a gun was found inside the car, the jury reasonably could have concluded that the weight of the evidence supported the conclusion that the gun belonged to Mr. Herring. Likewise, because the drugs found inside the car were in plain view in the driver's side door, the jury reasonably could have concluded that the drugs belonged to Mr. Herring. Mr. Herring has not shown that the trier of fact lost its way in convicting him. As such, his fourteenth assignment of error is overruled.

**ASSIGNMENT OF ERROR XVI**

**THE TRIAL COURT ERRED IN SENTENCING TO CONSECUTIVE SENTENCES[.]**

**{¶79}** In his sixteenth assignment of error, Mr. Herring argues the trial court erred when it ordered him to serve consecutive sentences. According to Mr. Herring, the court "reference[d] the principles and purposes of felony sentencing but [made] little record of consecutive sentences * * *." Upon review, we reject his argument.

**{¶80}** This Court may modify or vacate consecutive sentences "only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. *Accord State v. Gwynne*, Slip Opinion No. 2023-Ohio-3851, ¶

13. "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954).

{¶81} To impose consecutive sentences, "a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry * * *." *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, syllabus. The court is not required to explain its findings or include "'a word-for-word recitation of the language of the statute * * *.'" *State v. Brundage*, 9th Dist. Summit No. 29477, 2020-Ohio-653, ¶ 17, quoting *Bonnell* at ¶ 29. Nevertheless, a reviewing court must be able to "discern that the trial court engaged in the correct analysis" and conclude "that the record contains evidence to support the [trial court's] findings." *Bonnell* at ¶ 29. "If it is impossible to discern whether the trial court engaged in the correct analysis or made the required statutory findings, the imposition of consecutive sentences must be reversed, and the matter must be remanded for resentencing so that the trial court 'can properly consider R.C. 2929.14(C)(4) and make the necessary findings.'" *State v. Gales*, 9th Dist. Summit No. 29316, 2022-Ohio-776, ¶ 38, quoting *State v. Callaghan*, 9th Dist. Summit No. 29431, 2021-Ohio-1047, ¶ 24-25. *See also State v. Mellott*, 9th Dist. Wayne Nos. 16AP0081, 16AP0082, 2017-Ohio-7545, ¶ 16.

{¶82} The trial court specifically addressed consecutive sentencing at Mr. Herring's sentencing hearing. The court stated:

> Consecutive sentences are necessary to protect the public from future crime and to punish the defendant because I find it is not disproportionate to the seriousness of the offender's conduct * * * and to the danger the offender poses to the public given the offender's history of criminal conduct as it demonstrates to me in this case based upon his past record along with the fact that we had two really separate incidents involving violence as well as drugs, and firearms demonstrates the necessity of consecutive sentences to protect the public from future crime.

Further, in its sentencing entry, the trial court likewise made the appropriate findings under R.C. 2929.14(C)(4). Although it was not required to do so, the trial court explained its rationale for imposing consecutive sentences. *See Brundage* at ¶ 17, quoting *Bonnell* at ¶ 29. It clearly outlined its concerns regarding Mr. Herring's criminal history, the number of his charges, the fact that both involved violence and drugs, and the fact that a firearm was involved. Upon review, we cannot say that the record does not clearly and convincingly support the trial court's imposition of consecutive sentences. *See Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, at ¶ 1; *Gwynne*, Slip Opinion No. 2023-Ohio-3851, at ¶ 13. As such, Mr. Herring's sixteenth assignment of error is overruled.

## III.

**{¶83}** Mr. Herring's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

―――――

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to

mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

      Costs taxed to Appellant.

                                            _____

SCOT STEVENSON
FOR THE COURT

SUTTON, P. J.
<u>CONCURS.</u>

CARR, J.
<u>CONCURS IN JUDGMENT ONLY.</u>

<u>APPEARANCES:</u>

KIMBERLY KENDALL CORRAL, Attorney at Law, for Appellant.

GABRIELLE M. PLOPLIS, Attorney at Law, for Appellant.

J.D. TOMLINSON, Prosecuting Attorney, and LINDSEY C. POPROCKI, Assistant Prosecuting Attorney, for Appellee.