[Cite as *State v. Lewis*, 2019-Ohio-3929.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                          Court of Appeals No. L-18-1069

      Appellee                                      Trial Court No. CR0201701790

v.

Terrance Lewis                                    **DECISION AND JUDGMENT**

      Appellant                                     Decided:  September 27, 2019

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Alyssa Breyman, Assistant Prosecuting Attorney, for appellee.

Karin L. Coble, for appellant.

* * * * *

**SINGER, J.**

{¶ 1} This is an appeal by appellant, Terrance Lewis, from the March 22, 2018

judgment of the Lucas County Court of Common Pleas, after he was found guilty of two

counts of felonious assault with specifications, and was sentenced to 20 years in prison. For the reasons that follow, we affirm, in part, vacate, in part, and modify the sentence.

{¶ 2} Appellant sets forth four assignments of error:

Assignment of Error One: The guilty verdict was against the manifest weight of the evidence.

Assignment of Error Two: Defense counsel rendered ineffective assistance of counsel, depriving appellant of Due Process in violation of the Sixth Amendment to the U.S. Constitution and Article I, Section 10 of the Ohio Constitution.

Assignment of Error Three: The trial court erred in sentencing Lewis pursuant to the post-2016 version of R.C. 2941.146 rather than the version in effect at the time of the offense, and therefore erred in imposing two prison terms for two specifications.

Assignment of Error Four: The trial court's judgment entry relative to costs does not reflect the waiver of all costs stated at the sentencing hearing.

## Facts

{¶ 3} On the evening of October 20, 2015, D.B. was driving a vehicle eastbound on Alexis Road in Toledo, Ohio, with his fiancée, J.C., as a passenger. At the same time and in the same general vicinity, approximately 15 to 20 motorcyclists were also travelling east on Alexis Road; appellant was one of the motorcyclists. When D.B.'s vehicle and the motorcyclists were near the on-ramp to the highway, an interaction

2.

occurred between D.B. and appellant, and appellant took out his gun and fired shots. No one was struck by the bullets. Appellant then drove onto the highway, followed by D.B. D.B.'s fiancée called 911, and both she and D.B. spoke to the 911 operator and were able to provide the license plate number of the motorcycle. In time, D.B. lost sight of appellant. D.B. stopped his vehicle at a fast food restaurant and he and his fiancée met with police. Two bullet holes were found in the rear passenger door of D.B.'s vehicle.

{¶ 4} Police investigated the incident and located a 9 millimeter shell casing in the area where the shooting occurred. Police also identified the owner of the motorcycle ("the owner"). On October 22, 2015, D.B. and J.C. went to the police station to view a photo array, which included the owner but did not include appellant. Neither D.B. nor J.C. recognized the owner as the shooter. With no further leads, the case went inactive.

{¶ 5} In the winter of 2016-2017, the police learned of the association between the owner and appellant. D.B. and J.C. were contacted by police and, in March 2017, the couple went to the police station to view a photo array which included appellant. D.B. identified appellant as the shooter, but J.C. did not.

{¶ 6} Appellant was arrested on March 16, 2017, and was interviewed by police. Appellant admitted riding the owner's motorcycle on October 20, 2015, he admitted owning a 9 millimeter gun, which he claims was later stolen, and he admitted shooting two times at D.B.'s vehicle because "he turned towards me like he was trying to run me off the road so that's when I did that."

{¶ 7} On May 9, 2017, appellant was indicted on two counts of felonious assault, in violation of R.C. 2903.11(A)(2) and (D), both felonies of the second degree. Each

3.

count included a firearm specification, pursuant to R.C. 2941.145, and a specification that the firearm was discharged from a motor vehicle, pursuant to R.C. 2941.146. Appellant pled not guilty.

{¶ 8} A jury trial commenced on February 26, 2018. After the presentation of testimony, evidence and arguments, the court gave the jury instructions, which included an instruction on self-defense. On March 1, 2018, the jury found appellant guilty of the two counts of felonious assault and all of the specifications. On March 16, 2018, appellant was sentenced to a total of 20 years of incarceration. Appellant timely appealed.

### First Assignment of Error

{¶ 9} Appellant argues the verdict was against the manifest weight of the evidence, as the state failed to prove beyond a reasonable doubt that appellant knowingly attempted to cause physical harm. Appellant asserts he intentionally fired shots at the trunk of the car, as he wanted D.B. to leave him alone. Appellant contends he is not a firearms expert and he did not have a subjective belief that any probability for physical harm existed.

{¶ 10} The state counters it presented competent and credible evidence from which the jury could find appellant acted knowingly when he fired two gunshots at the vehicle occupied by D.B. and J.C.

### Law

{¶ 11} In a manifest weight challenge, we determine whether the greater amount of credible evidence supports the conviction. *Eastley v. Volkman*, 132 Ohio St.3d 328,

4.

2012-Ohio-2179, 972 N.E.2d 517, ¶ 12.  We must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether the jury, in resolving conflicts in the evidence, "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"  (Citation omitted.)  *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶ 12} When we consider witness credibility, we must remember "the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact."  *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986).  The trier of fact is "in the best position to observe the evidence presented, the witnesses' testimony, including their demeanor, voice inflection, and mannerisms, in order to determine the credibility of each witness."  *State v. Saunders*, 10th Dist. Franklin No. 99AP-1486, 2000 WL 1724823, *3 (Nov. 21, 2000).

{¶ 13} Felonious assault is defined as knowingly attempting or causing physical harm with a deadly weapon.  R.C. 2903.11(A)(2).  A person acts knowingly when, regardless of purpose, the person is "aware that his conduct will probably cause a certain result or will probably be of a certain nature."  R.C. 2901.22(B).

{¶ 14} To support a conviction on a firearm specification, as defined in R.C. 2941.145, the state must prove the offender had a firearm while committing the offense. To obtain a conviction on a specification for discharging a firearm from a motor vehicle, as defined in R.C. 2941.146, the state must prove the offender knowingly attempted to

5.

cause the death of or physical harm to another, and that was committed by discharging a firearm from a motor vehicle. R.C. 4501.01(B) and (ZZ) define a motorcycle as a motor vehicle.

{¶ 15} Self-defense is an affirmative defense and must be proven by a preponderance of the evidence. R.C. 2901.05(A). To establish self-defense, appellant would have to show (1) he was not at fault in creating the situation giving rise to the shooting; (2) he had a bona fide belief that he was in imminent danger of death or great bodily harm and the only means of escape from such danger was the use of deadly force; and (3) he did not violate any duty to retreat or avoid the danger. *See State v. Robbins*, 58 Ohio St.2d 74, 388 N.E.2d 755 (1979), paragraph two of the syllabus.

## Analysis

{¶ 16} At trial, several witnesses testified. The relevant testimony follows.

{¶ 17} D.B. testified that on October 20, 2015, he was driving down Alexis Road when "all of a sudden a big pack of bikes [came] around us, cutting in between us, going around us, doing whatever they got to do to stay together. Just driving very recklessly, just wheelies * * *." D.B. was at a red light near the interchange for the highway when one motorcyclist, appellant, "went all the around us and another vehicle that was next to us in to oncoming traffic, cut us off, got in the lane beside us." Appellant pulled up next to D.B.'s passenger window, lifted his mask up and tried to say something. The windows on D.B. vehicle were down, so while D.B. rolled up his tinted windows he waived appellant away with his hand, and pulled his vehicle forward about five feet. As D.B. looked back, he saw appellant pulling something out of his jacket. D.B. heard three

6.

shots, saw appellant accelerate to meet up with the rest of the motorcyclists, and stop. D.B. was then able to read the license plate of the motorcycle appellant was riding.

{¶ 18} Appellant then took off onto the highway with the other motorcyclists. D.B. chased appellant, while J.C. was on the phone calling 9-1-1. Police were able to stop some of the motorcyclists as they exited the highway, but appellant was not among them.

{¶ 19} J.C. testified she was a passenger in the vehicle driven by D.B. and she noticed 15 to 20 crotch rocket motorcycles driving recklessly. When their vehicle stopped in the area of the highway interchange, appellant was right next to them. J.C. saw appellant's eyes, as the visor on his helmet was up. D.B. pulled the car forward and J.C. looked straight ahead, hoping appellant would leave them alone. D.B. rolled up the windows, then J.C. heard three shots. Appellant drove off onto the highway. J.C. said, "[w]e didn't know the car got hit with shots, we just knew he shot * * * [w]e called the cops first and then we went behind him."

{¶ 20} After D.B. stopped the car, J.C. discovered "there was a bullet hole literally so close to hitting me and it just made me break down completely, like this bullet could have hit me * * * he was trying to kill us obviously."

{¶ 21} Appellant testified he was riding a motorcycle with a group of motorcyclists, on October 20, 2015, and he was not driving recklessly. He became aware of D.B.'s car when the traffic light turned green because the car's tires squealed and the car sped up. Appellant noticed the windows of D.B.'s car were tinted and up, so he could not see into D.B.'s car. Appellant said he was riding in the right, curb lane and never left

7.

his lane, while D.B.'s car was in the left lane. As they approached the highway on-ramp, the motorcycles slowed down and got into a single file formation. Appellant saw D.B.'s car "hanging to my left side," then the car swerved into appellant's lane a little bit. The car went back into its own lane while appellant went over towards the curb a little bit. While still moving, appellant threw up his arms "to just signal like what the, what the, what's going on." D.B. "rolls his window down * * * he's leaned over * * * because the passenger, she like leaned back so he could lean over, over her to say [a racial slur]." Appellant described D.B. as "aggravated, angry * * * [when] [h]e came back, like his car came back towards me." Appellant estimated the car was just a few feet away from him.

{¶ 22} Appellant testified he reached into his jacket "and unholstered my weapon and I leaned over, my right hand, and looked toward the back of the car and fired twice." Appellant never stopped the motorcycle, but he had slowed down when he fired the shots. Appellant admitted the brakes on the motorcycle were operational. After the incident, appellant drove onto the highway and "went to Holland. I went home."

{¶ 23} Appellant testified he could have shot "directly into the car * * * [because] [w]e were like neck and neck. We were right next to each other." But, appellant shot "[t]owards the trunk of the car. * * * I didn't want to hurt anybody. I just wanted him to leave me alone." Appellant had been injured in a motorcycle accident with a car in 2012, so he "knows how it feels to get his by a car, so I - I didn't want to get hit by that car" and he wanted D.B.'s car not to swerve near him anymore. Appellant also stated he fired the gun to defend himself.

8.

{¶ 24} Appellant testified that a little while after the incident, he told a friend, "a guy tried to run me off [of] the road and I fired two shots at him to back him up off [of] me and I got on the highway to get away and he chased me." Appellant acknowledged that in his police interview, he said D.B. swerved at him one time, which was "[t]he time that made me shoot," and he did not mention to police that D.B. said a racial slur.

{¶ 25} Toledo Police Department Detective Richard Singlar testified there were two bullet holes in the right, rear, passenger door and underneath the door of D.B.'s vehicle. With respect to the trajectory of a bullet hitting a car, the detective said the bullet can ricochet, bounce off or change direction. As to the location of the bullet holes in D.B.'s vehicle, Det. Singlar opined it was possible that someone in the front seat of the car could be injured by the shots. The detective agreed with defense counsel that it looked like "the path of this bullet is such that it kind of came from the front and went to the back."

{¶ 26} Numerous exhibits were offered into evidence at trial including a copy of the 911 call, an edited version of appellant's interview with police, the bullet found by police near the shooting and photographs of the car D.B. was driving on the night of the incident, showing two bullet holes in the rear, passenger-side door.

{¶ 27} A review of the entire record shows appellant testified the windows of D.B.'s car were tinted and up and appellant could not see into the car until D.B. rolled a window down and then appellant could see the person driving and a person on the passenger side. Appellant admitted he was slowly driving a motorcycle when he fired his

9.

gun towards the trunk or rear of D.B.'s car. The evidence reveals two bullets holes were found in the rear passenger-side door of the car, not the trunk, at a point described by J.C. as "literally so close to hitting me."

{¶ 28} Having carefully reviewed the evidence presented at trial, we are unable to find appellant's convictions are against the manifest weight of the evidence. Appellant knew there were at least two people in the car at which he fired multiple gunshots while driving a motorcycle. Although there were some discrepancies in the witnesses' testimony, as well as conflicting testimony as to what occurred before the shooting, we find there was competent, credible evidence and testimony presented from which the jury could reasonably conclude that appellant knowingly attempted to cause physical harm to D.B. and J.C., while having a firearm and discharging the firearm from a motor vehicle.

{¶ 29} With respect to the self-defense claim, the evidence regarding the elements of self-defense conflicted. Testimony was presented that appellant may have created the situation giving rise to the shooting by pursuing D.B.'s vehicle and driving recklessly. However, appellant testified he was not driving recklessly and D.B. swerved his vehicle at appellant twice. There was also testimony that appellant could have avoided any danger that he perceived, as appellant admitted the motorcycle had brakes which were operational but he never stopped, he only slowed down. Yet, appellant testified that when he slowed the motorcycle, D.B. also slowed his vehicle.

{¶ 30} As mentioned above, "the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact." *Awan*, 22 Ohio St.3d at 123, 489 N.E.2d 277.

10.

{¶ 31} Here, given the evidence, the jury could have concluded that appellant failed to prove the first prong of self-defense, based on the testimony that he was the one who created the dangerous situation, as well as the third prong, based on his testimony that he never stopped his motorcycle in order to avoid the danger. Thus, the jury's finding that appellant did not act in self-defense is not against the manifest weight of the evidence.

{¶ 32} We therefore conclude the manifest weight of the evidence supported the jury's guilty verdicts on the felonious assault charges and specifications, and the jury did not clearly lose its way. Accordingly, appellant's first assignment of error is not well-taken.

Second Assignment of Error

{¶ 33} Appellant argues his trial counsel was ineffective because her strategy was unreasonable, she alienated the jury, and created an unfair trial. Appellant contends counsel admitted in opening statements that appellant fired warning shots to save his life, then challenged the victims' identification of appellant as the shooter, which was not a sound strategy. Appellant asserts counsel raised self-defense as an affirmative defense which is contradictory to claiming appellant was wrongfully identified as the shooter.

{¶ 34} The state counters trial counsel's strategy was to challenge D.B.'s credibility as a whole, and counsel vigorously cross-examined D.B. and J.C. in an attempt to demonstrate their testimony was unreliable. The state maintains it was not illogical or deficient of counsel to raise the claim of self-defense. In addition, the state observes appellant failed to demonstrate he was prejudiced by his counsel's performance.

11.

**Law**

{¶ 35} To prevail on a claim of ineffective assistance of counsel, appellant must prove counsel's performance was deficient, as it fell below an objective standard of reasonable representation, and but for counsel's errors, there is a reasonable probability that the outcome of the trial would have been different. *See State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 113; *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶ 36} In *State v. Mick*, 6th Dist. Erie No. E-16-073, 2018-Ohio-999, 108 N.E.3d 1149, ¶ 18, we stated:

> When challenging counsel's trial strategy through an ineffective assistance claim on appeal, 'the appellant must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *."' *State v. Lawson*, 64 Ohio St.3d 336, 341, 595 N.E.2d 902 (1992), quoting *Strickland* at 689, 104 S.Ct. 2052. Debatable trial tactics generally do not constitute a deprivation of effective counsel. *State v. Phillips*, 74 Ohio St.3d 72, 85, 656 N.E.2d 643 (1995).

**Analysis**

{¶ 37} Upon review, we find appellant has failed to show his trial counsel's performance was deficient or that he was prejudiced by counsel's performance. Appellant's counsel thoroughly cross-examined D.B. and J.C. regarding the events which transpired before, during and after the shooting. In that cross-examination, counsel

12.

elicited testimony from D.B. and J.C. about their memories of the shooter, chasing after the shooter, meeting and talking with police and viewing the two photo arrays. Counsel's attempt to discredit these witnesses and cast doubt on their credibility was reasonable trial strategy. Further, appellant has not proven that the result of the case would have been different had counsel not questioned the witnesses about appellant's identity. Accordingly, appellant's second assignment of error is not well-taken.

### Third Assignment of Error

{¶ 38} Appellant contends the trial court erred in sentencing him pursuant to the post-2016 versions of R.C. 2941.146, the specification concerning discharge of firearm from a motor vehicle ("discharge specification"), and R.C. 2929.14, rather than the versions of the statutes in effect at the time of the offense, and erred in imposing two five-year mandatory prison terms for the two discharge specifications.

{¶ 39} Appellant was found guilty of two counts of felonious assault, two firearm specifications, under R.C. 2941.145, and two discharge specifications, under R.C. 2941.146. At the sentencing hearing, the court imposed the following sentence: a five-year prison term for each of the two counts of felonious assault, to run consecutive to one another; a five-year mandatory prison term for each of the two discharge specifications (under R.C. 2941.146), to be served consecutively to each other and consecutively to the felonious assault sentences; a three-year mandatory prison term for each of the two firearm specifications (under R.C. 2941.145), to be served consecutively to each other but concurrent with the two five-year terms for the two discharge specifications.

13.

**Law**

{¶ 40} An appellate court's consideration of a felony sentence is governed by R.C. 2953.08(G)(2), and the court may increase, modify or vacate a felony sentence on appeal and remand the matter if the court finds "by clear and convincing evidence that * * * the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1.

{¶ 41} The version of the relevant laws in effect at the time of the October 2015 incident follow.

{¶ 42} R.C. 2941.145, the firearm specification, states in relevant part:

(A)  Imposition of a three-year mandatory prison term upon an offender under division (B)(1)(a) of section 2929.14 of the Revised Code is precluded unless the indictment, count in the indictment, or information charging the offense specifies that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense.

{¶ 43} R.C. 2941.146, the discharge specification, states in relevant part:

(A)  Imposition of a mandatory five-year prison term upon an offender under division (B)(1)(c) of section 2929.14 of the Revised Code for * * * committing a felony that includes, as an essential element, purposely or knowingly causing or attempting to cause the death of or

14.

physical harm to another and that was committed by discharging a firearm from a motor vehicle other than a manufactured home * * *.

{¶ 44} R.C. 2929.14 states in relevant part:

* * *

(B)(1)(a) * * * [I]f an offender who is convicted of or pleads guilty to a felony also is convicted of or pleads guilty to a specification of the type described in section * * * 2941.145 of the Revised Code, the court shall impose on the offender one of the following prison terms:

* * *

(ii) A prison term of three years if the specification is of the type described in section 2941.145 of the Revised Code that charges the offender with having a firearm on or about the offender's person or under the offender's control while committing the offense and * * * using it [the firearm] to facilitate the offense;

* * *

(b) * * * Except as provided in division (B)(1)(g) of this section, a court shall not impose more than one prison term on an offender under division (B)(1)(a) of this section for felonies committed as part of the same act or transaction.

(c) * * * [I]f an offender who is convicted of or pleads guilty to * * * a felony that includes, as an essential element, purposely or knowingly causing or attempting to cause the death of or physical harm to another,

also is convicted of or pleads guilty to a [discharge] specification of the type described in section 2941.146 * * *, after imposing a prison term on the offender for the * * * other felony offense * * * shall impose an additional prison term of five years upon the offender that shall not be reduced * * *. A court shall not impose more than one additional prison term on an offender under division (B)(1)(c) of this section for felonies committed as part of the same act or transaction. If a court imposes an additional prison term on an offender under division (B)(1)(c) of this section relative to an offense, the court also shall impose a prison term under division (B)(1)(a) of this section relative to the same offense, provided the criteria specified in that division for imposing an additional prison term are satisfied relative to the offender and the offense.

* * *

(g) If an offender is convicted of or pleads guilty to two or more felonies, if one or more of those felonies are * * * felonious assault * * * and if the offender is convicted of or pleads guilty to a specification of the type described under division (B)(1)(a) of this section [firearm specification under R.C. 2941.145] in connection with two or more of the felonies, the sentencing court shall impose on the offender the prison term specified under division (B)(1)(a) of this section for each of the two most serious specifications of which the offender is convicted or to which the offender pleads guilty and, in its discretion, also may impose on the offender the

prison term specified under that division for any or all of the remaining specifications.

* * *

(C)(1)(a) * * * [I]f a mandatory prison term is imposed upon an offender pursuant to division (B)(1)(a) of this section for having a firearm on or about the offender's person or under the offender's control while committing a felony, if a mandatory prison term is imposed upon an offender pursuant to division (B)(1)(c) of this section for committing a felony specified in that division by discharging a firearm from a motor vehicle, or if both types of mandatory prison terms are imposed, the offender shall serve any mandatory prison term imposed under either division consecutively to any other mandatory prison term imposed under either division * * *, consecutively to and prior to any prison term imposed for the underlying felony pursuant to division (A), (B)(2), or (B)(3) of this section or any other section of the Revised Code, and consecutively to any other prison term or mandatory prison term previously or subsequently imposed upon the offender.

**Analysis**

{¶ 45} Upon review, we find merit in appellant's assertion that the trial court erred in imposing two five-year mandatory prison terms for the two discharge specifications.

{¶ 46} Appellant was convicted of felonies that include knowingly causing or attempting to cause the death of or physical harm to another and was also convicted of

17.

two discharge specifications under R.C. 2941.146.  Therefore, pursuant to R.C. 2929.14(B)(1)(c), the court was required to impose an additional prison term of five years, but "[a] court shall not impose more than one additional prison term on an offender under division (B)(1)(c) * * * for felonies committed as part of the same act or transaction."  The Supreme Court of Ohio has defined "same act or transaction" as a "'series of continuous acts bound by time, space and purpose, and directed toward a single objective.'"  (Citation omitted.) *State v. Wills*, 69 Ohio St.3d 690, 691, 635 N.E.2d 370 (1994).

{¶ 47} In *State v. Williams*, 10th Dist. Franklin No. 96APA08-1077, 1997 WL 254114, *3 (May 15, 1997), numerous shots were fired into a vehicle with four occupants.  The appellate court applied the *Wills* definition of "transaction" and found the underlying felonies, of involuntary manslaughter and attempted involuntary manslaughter, were committed as part of the same transaction.  *Id.  See also State v. Phillips*, 8th Dist. Cuyahoga No. 96329, 2012-Ohio-473, ¶ 41 (multiple shots fired at rival gang members were the same transaction, so trial court could impose only one five-year specification).

{¶ 48} Here, appellant's two felonious assault offenses arose from a series of continuous acts, (shooting a gun) bound by time, space and purpose (in rapid sequence on the roadway at D.B.'s vehicle), and directed toward a single objective (to stop D.B.'s vehicle from swerving at appellant).  Thus, the felonies were committed as part of the

18.

same act or transaction. As such, we find appellant should have been sentenced to one five-year discharge specification. Since appellant was sentenced to two five-year discharge specifications, we find this portion of appellant's sentence is clearly and convincingly contrary to law. Accordingly, appellant's third assignment of error is well-taken.

{¶ 49} While reviewing the record, we noticed and raise, sua sponte, an error in the imposition of sentence concerning the two three-year firearm specifications.

{¶ 50} Since appellant was convicted of two felonies, both for felonious assault, and was also convicted of two firearm specifications under R.C. 2941.145, in connection with those two felonies, the trial court was required to impose, pursuant to R.C. 2929.14(B)(1)(g), a three-year prison term as specified in R.C. 2929.14(B)(1)(a)(ii), for each of the two firearm specifications, and was required, under R.C. 2929.14(C)(1)(a), to order those two, three-year prison terms to be served consecutively to each other, consecutively to and prior to the prison terms imposed for the underlying felonies and consecutively to any other mandatory prison term imposed.

{¶ 51} At sentencing, the court ordered a three-year mandatory prison term for each of the two firearm specifications, to be served consecutively to each other but concurrent with the discharge specifications. We find this portion of the court's sentence to be contrary to law as the court was required to order the two, three-year prison terms for the firearm specifications to be served consecutively to each other as well as consecutively to the mandatory prison term imposed for the discharge specification.

19.

**Fourth Assignment of Error**

{¶ 52} Appellant asserts the trial court's judgment entry relative to costs does not reflect the waiver of all costs stated at the sentencing hearing. Appellant requests the judgment entry be modified to reflect the trial court's waiver of costs.

**Law**

{¶ 53} A court is required, in criminal cases, to "include in the sentence the costs of prosecution * * * and render a judgment against the defendant for such costs." R.C. 2947.23(A)(1)(a). However, the court "retains jurisdiction to waive, suspend, or modify the payment of the costs of prosecution * * * at the time of sentencing or at any time thereafter." R.C. 2947.23(C). As we observed in *State v. Temple*, 6th Dist. Lucas No. L-18-1070, 2019-Ohio-3503, ¶ 11, "a trial court has discretion to waive the payment of court costs if the defendant is indigent." Since the trial court retains jurisdiction pursuant to R.C. 2947.23(C), an appellant "has the option to move the court to waive the imposition of the costs of prosecution. *State v. Wymer*, 6th Dist. Lucas No. L-18-1108, 2019-Ohio-1563, ¶ 13, fn. 1, citing *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.2d 1028, ¶ 263-265." *Id.* Thus, we found the court's imposition of the costs of prosecution was harmless error. *Id.*

{¶ 54} "Unlike the costs of prosecution, imposition of the costs of appointed counsel and confinement must be conditioned upon appellant's ability to pay." *Temple* at ¶ 12. But, if the court did not impose these costs during the sentencing hearing, it is not sufficient for the court to include these costs in the sentencing entry and make a finding

20.

that the defendant has the ability to pay. *Id.* at ¶ 13. Therefore, we found the portion of the sentencing judgment entry ordering the payment of the costs of assigned counsel, confinement, and supervision must be vacated. *Id.* at ¶ 14.

## Analysis

{¶ 55} Upon review, at appellant's sentencing hearing, the trial court verbally ordered all costs waived. However, in the March 22, 2018 judgment entry, appellant was "found to have, or reasonably may be expected to have, the means to pay all or part of the applicable costs of supervision, confinement, assigned counsel, and prosecution as authorized by law." Appellant was ordered to reimburse the state of Ohio and Lucas County for these costs.

{¶ 56} In accordance with *Temple*, we vacate the portion of appellant's judgment entry ordering appellant to pay for the costs of assigned counsel, confinement, and supervision. Regarding the imposition of the costs of prosecution, although appellant should have been informed of these costs at the sentencing hearing, any error is harmless because appellant may move the trial court to waive these costs.

{¶ 57} Accordingly, appellant's fourth assignment of error is well-taken.

## Conclusion

{¶ 58} To summarize, we overrule appellant's first and second assignments of error, but we sustain appellant's third and fourth assignments of error.

{¶ 59} We exercise our authority under R.C. 2953.08(G)(2) to modify appellant's sentence, and we vacate one five-year prison term for the discharge specification, leaving one five-year prison term for the discharge specification. Further, we vacate the

21.

imposition of prison terms imposed for the two three-year firearm specifications concurrent with the discharge specifications, and we impose two three-year prison terms for the two firearm specifications to be served consecutively to each other, consecutively to and prior to the prison terms imposed for the felonious assault convictions and consecutively to the five-year prison term for the discharge specification.

{¶ 60} In addition, we vacate the portion of the judgment entry finding appellant has or may have the means to pay the costs of supervision, confinement and assigned counsel, and ordering appellant to reimburse the state of Ohio and Lucas County for these costs.

{¶ 61} Appellee and appellant are ordered to split the costs of this appeal pursuant to App.R. 24.

Judgment affirmed, in part,
and vacated, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.                       _____
                                                                   JUDGE
Arlene Singer, J.

                                                    _____
Gene A. Zmuda, J.                                JUDGE
CONCUR.

                                                    _____
                                                                   JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.