[Cite as *State v. Kinard*, 2025-Ohio-1907.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 31120 |
|---|---|

Appellee

v.

DACARREI KINARD

Appellant

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR 23 06 1989

DECISION AND JOURNAL ENTRY

Dated: May 28, 2025

STEVENSON, Presiding Judge.

{¶1}    Defendant-Appellant, Dacarrei Kinard, appeals from the judgment of the Summit County Court of Common Pleas.  This Court affirms in part, reverses in part, and remands for further proceedings.

I.

{¶2}    Mr. Kinard shot and killed another driver while the two were driving eastbound on I-76.  Before the shooting occurred, the decedent tailgated Mr. Kinard, cut him off, repeatedly brake-checked him, and swerved to prevent him from passing.  Mr. Kinard was eventually able to merge right behind a slower moving vehicle.  He then used an entrance ramp/the shoulder of the highway to pass the slower moving vehicle on the right and pull even with the decedent.  Moments after he did so, Mr. Kinard fired at least eight shots at the decedent.

{¶3}    Mr. Kinard was indicted for murder, felony murder, felonious assault, discharging a firearm on a prohibited premises, and improperly handling firearms in a motor vehicle.  Each of

his counts carried a three-year firearm specification. Additionally, his counts for murder, felony murder, and felonious assault all carried a five-year drive-by shooting specification. The State ultimately dismissed Mr. Kinard's charge of improperly handling firearms in a motor vehicle. His remaining counts and specifications were tried to a jury.

{¶4} At trial, Mr. Kinard admitted he shot the decedent but claimed he did so in self-defense. Regarding the counts of murder and felony murder, the jury found him guilty of the lesser-included offense of voluntary manslaughter. The jury found him guilty of the remaining counts and specifications as charged. The trial court sentenced him to an indefinite term of 15 to 17.5 years in prison.

{¶5} Mr. Kinard now appeals from the trial court's judgment and raises five assignments of error for review.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT IMPROPERLY EXCLUDED EVIDENCE[.]

{¶6} In his first assignment of error, Mr. Kinard argues the trial court erred when it excluded other acts evidence he sought to introduce at trial. For the following reasons, we reject his argument.

{¶7} "The trial court has broad discretion in the admission of evidence . . . ." *State v. Issa*, 93 Ohio St.3d 49, 64 (2001). "Absent an issue of law, this Court, therefore, reviews the trial court's decision regarding evidentiary matters under an abuse of discretion standard of review." *State v. Ellis*, 2014-Ohio-4186, ¶ 25 (9th Dist.). The term abuse of discretion is used to indicate that the trial court's attitude was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "Unless the trial court 'has clearly abused its discretion

and the defendant has been materially prejudiced thereby, an appellate court should not disturb the decision of the trial court.'" *Akron v. Threadgill*, 2024-Ohio-5674, ¶ 13 (9th Dist.), quoting *Issa* at 64.

{¶8}  Mr. Kinard filed a motion in limine before trial.  He sought to introduce 32 videos wherein the decedent had used his cell phone to film himself engaged in "numerous road rage instances."  Mr. Kinard argued the evidence was admissible under Evid.R. 404(B) because it established motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

{¶9}  The trial court denied Mr. Kinard's motion in limine based on *State v. Barnes*, 94 Ohio St.3d 21 (2002).  The *Barnes* Court held that "[a] defendant asserting self-defense cannot introduce evidence of specific instances of a victim's conduct to prove that the victim was the initial aggressor."  *Barnes* at syllabus.  The trial court found that the videos Mr. Kinard sought to introduce were specific instances of the decedent's conduct that Mr. Kinard was offering to establish the decedent's propensity for aggression and to prove he was the initial aggressor.  Thus, it excluded the evidence under *Barnes*.

{¶10} Mr. Kinard argues the trial court erred as a matter of law when it excluded his evidence under *Barnes*.  He argues *Barnes* is distinguishable because the defendant therein sought to introduce evidence for the sole purpose of proving the victim was the initial aggressor.  Accordingly, the *Barnes* Court did not apply Evid.R. 404(B).  Unlike the defendant in *Barnes*, Mr. Kinard argues, he moved to introduce evidence of the decedent's prior acts "for other purposes."

{¶11} Mr. Kinard is correct that the *Barnes* Court did not apply Evid.R. 404(B).  Because the defendant therein only tendered evidence to prove the victim was the initial aggressor, the Supreme Court limited its analysis to Evid.R. 404(A) and 405.  *See id.* at 24-25.  It "express[ed]

no opinion . . . as to whether evidence of specific instances of a victim's conduct [was] admissible for other purposes in a self-defense case." *Id.* at 24, fn. 3. Even if we were to assume *Barnes* has no application in this case, however, we would still conclude that Mr. Kinard's assignment of error lacks merit. The first reason is that he failed to articulate an argument under Evid.R. 404(B). The second reason is that the record reflects any error in the exclusion of his evidence was harmless.

{¶12} Although Mr. Kinard claimed he was tendering the decedent's cell phone videos for one or more nonpropensity purposes, he never fully explained what those "other purposes" were. In his written motion and argument to the court, he simply recited the boilerplate language of Evid.R. 404(B). He did not explain how the cell phone videos helped establish motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. For other acts evidence to be admissible, "[t]he nonpropensity purpose for which the evidence is offered must go to a 'material' issue that is actually in dispute between the parties." *State v. Hartman*, 2020-Ohio-4440, ¶ 27, quoting *Huddleston v. United States*, 485 U.S. 681, 686 (1988). "[I]t is not enough to say that the evidence is relevant to a nonpropensity purpose." *Hartman* at ¶ 27. Mr. Kinard's motion and argument amounted to a blanket proposition that his evidence served a nonpropensity purpose.

{¶13} Further, Mr. Kinard has not shown that the exclusion of the cell phone videos affected the outcome of his trial. *See State v. Moreland*, 2016-Ohio-7588, ¶ 20 (9th Dist.), citing Crim.R. 52(A). The State readily admitted that the decedent engaged in aggressive driving. As detailed below, the evidence showed that the decedent cut off Mr. Kinard, brake-checked his vehicle, prevented him from changing lanes, and otherwise exhibited aggressive driving behavior. The State never suggested that the decedent accidentally drove in that manner or otherwise lacked the intent to drive aggressively. Mr. Kinard has not explained how evidence of a pattern of

aggressive driving on the part of the decedent would have changed the result in this matter, given that the State was admitting the decedent engaged in aggressive driving on this occasion. This Court will not construct an argument on his behalf. *See* App.R. 16(A)(7); *Cardone v. Cardone*, 1998 WL 224934, *8 (9th Dist. May 6, 1998). For the foregoing reasons, Mr. Kinard's first assignment of error is overruled.

**ASSIGNMENT OF ERROR II**

[MR. KINARD'S] CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]

{¶14} In his second assignment of error, Mr. Kinard argues his convictions are against the manifest weight of the evidence. Specifically, he argues the jury lost its way when it failed to conclude that he acted in self-defense. We do not agree.

{¶15} When considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist. 1986). "A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction." *State v. Croghan*, 2019-Ohio-3970, ¶ 26 (9th Dist.). This Court "'will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version.'" *State v. Tolliver*, 2017-Ohio-4214, ¶ 15 (9th Dist.), quoting *State v. Barger*, 2016-Ohio-443, ¶ 29 (9th Dist.).

{¶16} In Ohio, self-defense is an affirmative defense. *State v. Messenger*, 2022-Ohio-4562, ¶ 24. "[A] defendant charged with an offense involving the use of force has the burden of

producing legally sufficient evidence that [his] use of force was in self-defense." *Id.* at ¶ 25. "Once a defendant satisfies his burden of production, the burden of persuasion shifts to the State 'to prove beyond a reasonable doubt that the accused did not use force in self-defense.'" *State v. Massey*, 2024-Ohio-5542, ¶ 5 (9th Dist.), quoting *State v. Brooks*, 2022-Ohio-2478, ¶ 6. The State's burden "is subject to a manifest-weight review on appeal . . . ." *Messenger* at ¶ 27.

{¶17} The elements of self-defense are:

(1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he [or she] was in imminent danger of death or great bodily harm and that his [or her] only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger.

(Bracketed text in original.) *Id.* at ¶ 14, quoting *State v. Barnes*, 94 Ohio St.3d 21, 24 (2002). "To carry its burden of persuasion, the State need only disprove one of the foregoing elements beyond a reasonable doubt." *State v. Fleckenstein*, 2023-Ohio-4347, ¶ 24 (9th Dist.).

{¶18} At trial, the State produced evidence that the shooting occurred on I-76 east on a weekday at around 5:30 p.m. Detective Kevin Starling testified that the State was able to secure recorded footage from the Ohio Department of Transportation ("ODOT") and a car dealership off the Barber Road exit. While none of the recordings captured the exact moment of the shooting, they did capture moments leading up to it and moments directly after it. Detective Starling confirmed that the ODOT footage showed a blue Mazda cutting off a black Camaro. It also showed the Mazda changing lanes to block the Camaro from passing. The State produced evidence that the decedent was driving the Mazda and Mr. Kinard was driving the Camaro.

{¶19} An eyewitness who was driving a Nissan Versa ("the Nissan driver") testified that he saw some of the interaction between the decedent and Mr. Kinard. First, he saw the decedent brake-check Mr. Kinard, causing the latter to swerve to avoid a rear-end collision. The Nissan

driver testified that the maneuver almost caused Mr. Kinard to strike his car. To avoid being hit, the Nissan driver quickly applied his brakes and dropped back. The Nissan driver then saw Mr. Kinard try to pass the decedent, and the decedent "swerve suddenly to block the progress of [Mr. Kinard]." After the decedent stopped Mr. Kinard from passing, he brake-checked Mr. Kinard a second time.

{¶20} The Nissan driver testified that, following the second brake-check, Mr. Kinard dropped back before merging to the right. He watched Mr. Kinard use an entrance lane/the right shoulder of the highway to pass a box trailer to the right, merge back onto the highway, and pull up alongside the decedent on the decedent's right-hand side. The Nissan driver could not see in front of the box trailer but heard multiple gunshots after Mr. Kinard pulled up alongside the decedent. It was his impression that Mr. Kinard was angry and made "a direct, concerted effort to catch up to the [decedent]" after the decedent exhibited aggressive behavior. He testified that the decedent was not interacting with Mr. Kinard at the time Mr. Kinard passed the box trailer to the right to pull even with the decedent.

{¶21} The driver who was pulling the box trailer ("the box trailer driver") testified that he first noticed Mr. Kinard's Camaro when Mr. Kinard passed him on the right. He testified that Mr. Kinard used the entrance ramp/shoulder of the highway to pass him. He was surprised to see Mr. Kinard's car because he had made sure there were no cars trying to enter the highway from the entrance ramp. He testified that he had to slow down to let Mr. Kinard pass so that they were not involved in an accident. Moments after Mr. Kinard overtook him, the box trailer driver saw a gun come out of Mr. Kinard's window and expel shots at the decedent's car. The box trailer driver agreed that, before that point, he had not been paying any attention to the decedent's car. He testified that he never saw the decedent's car engaged in any aggressive driving maneuvers.

{¶22} Detective Ryan Connell testified as the lead investigator in this matter. He testified that the police recovered eight .40 caliber shell casings from the highway and found nine bullet holes in the decedent's car. The police were able to identify Mr. Kinard based on a picture of his license plate, his vehicle registration, and his cell phone records. The police learned that he resided in Columbus, but he was traveling on I-76 east at the time of the shooting. Directly after the shooting, Mr. Kinard sped off, exited the highway, entered the westbound side, and returned to Columbus. When Detective Connell interviewed Mr. Kinard, he denied owning a gun or being involved in the shooting. The detective testified that the police searched his car and residence for a gun but never found one.

{¶23} Mr. Kinard testified in his own defense. He testified that he was driving along I-76 east with his cruise control set to 65 m.p.h. when he first noticed the decedent's car. He testified that the decedent drove up behind him after he (Mr. Kinard) merged into the fast lane. As the decedent approached, Mr. Kinard stated, he saw him "going in and out of traffic from left to right, speeding up, slowing down, speeding up, slowing down, flashing his lights" and showing his hands "like he was mad." He testified that the decedent began tailgating him. He admitted that the decedent's behavior angered him.

{¶24} Mr. Kinard testified that he began driving faster but was unable to move over due to traffic. When Mr. Kinard remained in the fast lane, the decedent used the left berm to pass and forced his way in front of Mr. Kinard. Mr. Kinard said the decedent "scared the crap out of [him]" and was visibly screaming at him as he used the berm to pass. As soon as the decedent forced his way into Mr. Kinard's lane, he brake-checked Mr. Kinard. Mr. Kinard testified that the decedent brake-checked him several more times and would not allow him to get away. When he tried to

change lanes, the decedent swerved to the right and blocked his attempt. According to Mr. Kinard, he felt scared because he believed the decedent was trying to run him off the road.

{¶25} Mr. Kinard testified that he was eventually able to merge right. When he tried to pass the decedent on the right, however, the decedent came into his lane and forced him from the road. It was Mr. Kinard's testimony that he almost hit the box trailer driver. He testified that the decedent forced him into the right berm behind the box trailer. Mr. Kinard then accelerated and used the right shoulder to merge back onto the highway in front of the box trailer driver. He testified that, after he did so, he saw the decedent's car on his left.

{¶26} Mr. Kinard testified that the decedent was trying to match his speed while pointing, laughing, and clapping. He saw the decedent's car moving closer to his own and looked at the decedent. According to Mr. Kinard, he saw the decedent "pointing like a black object at [him]," and feared for his life. He stated that he bent down to take cover, grabbed his firearm, and shot out his window because he did not want the decedent to hurt him.

{¶27} Mr. Kinard admitted that, when he was interviewed, he lied to the police about the incident. He claimed that he lied because he panicked and was afraid to tell the truth. He admitted that he had a gun and that, a few days after the incident, he placed the gun in storage. Although he could not say for sure, Mr. Kinard thought the black object that he saw the decedent pointing at him was a gun. The parties stipulated that no gun was found inside the decedent's car.

{¶28} Mr. Kinard argues his convictions are against the manifest weight of the evidence because the evidence showed that he acted in self-defense. According to Mr. Kinard, the evidence showed that the decedent created the situation that occurred and that he (Mr. Kinard) reasonably believed he was in imminent danger of great bodily harm based on the decedent pointing a black

object at him as they drove at highway speeds. Mr. Kinard argues he had no duty to retreat because he was lawfully in his car on the highway. Thus, he argues the jury lost its way by convicting him.

**{¶29}** Having reviewed the record, we cannot conclude that the jury went so far as lose its way when it found that the State met its burden of persuasion and proved that Mr. Kinard did not act in self-defense. *See Messenger*, 2022-Ohio-4562, at ¶ 27. The State only needed to disprove one element of Mr. Kinard's self-defense claim to overcome it. *See Fleckenstein*, 2023-Ohio-4347, at ¶ 24 (9th Dist.). Even if the evidence showed that the decedent created this situation, the State set forth evidence that Mr. Kinard (1) lacked a bona fide reason to believe he was in imminent danger of great bodily harm and had the means to escape without shooting the decedent, and (2) violated a duty to retreat or avoid the danger. *See Barnes*, 94 Ohio St.3d at 24. The Nissan driver testified that Mr. Kinard was eventually able to merge into the right lane without interference from the decedent. He testified that Mr. Kinard cut into the right entrance ramp/shoulder of his own accord, used it to pass the box trailer driver, and cut back in front of the box trailer driver to pull even with the decedent. The Nissan driver never witnessed the decedent push Mr. Kinard onto the entrance ramp/shoulder. Moreover, the box trailer driver testified that Mr. Kinard cut in front of him and only a few moments elapsed before Mr. Kinard shot the decedent. He took no notice of the decedent's car before those shots were fired and never saw any aggressive driving on the part of the decedent. As noted, it was the Nissan driver's impression that Mr. Kinard was angry and made "a direct, concerted effort to catch up to the [decedent]" after the decedent exhibited aggressive behavior. Although Mr. Kinard testified to a different version of the events, the jury did not lose its way simply because it chose to believe the State's evidence. *See Tolliver*, 2017-Ohio-4214, at ¶ 15 (9th Dist.), quoting *Barger*, 2016-Ohio-443, at ¶ 29 (9th Dist.). The jury reasonably could have determined that Mr. Kinard, after safely making his way into a slower lane,

was so angry with the decedent that he chose to give chase, cut off the box trailer driver using the shoulder of the highway, and shoot the decedent as soon as he was level with his car. Upon review, we cannot conclude that this is an exceptional case in which the evidence weighs heavily against Mr. Kinard's convictions. *See Croghan*, 2019-Ohio-3970, at ¶ 26 (9th Dist.). Accordingly, his second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

[MR. KINARD'S] CONVICTIONS ARE SUPPORTED BY INSUFFICIENT EVIDENCE AS A MATTER OF LAW[.]

{¶30}  In his third assignment of error, Mr. Kinard argues that several of his convictions and specifications are based on insufficient evidence. Upon review, we reject his arguments.

{¶31}  First, Mr. Kinard argues his convictions are based on insufficient evidence because he acted in self-defense. This Court has recognized that, when a defendant claims self-defense and appeals an unfavorable jury verdict, "a challenge to the sufficiency of the evidence is not appropriate." *State v. Pursley*, 2025-Ohio-530, ¶ 5 (9th Dist.). That is because the State's burden of disproving a claim of self-defense "is subject to a manifest-weight review on appeal . . . ." *Messenger*, 2022-Ohio-4562, at ¶ 27. We have already determined that Mr. Kinard's convictions are not against the manifest weight of the evidence. *See* Discussion of Assignment of Error II, *supra*. Accordingly, we need not revisit that determination.

{¶32}  Second, Mr. Kinard argues his voluntary manslaughter conviction must be vacated because his verdict forms did not comply with R.C. 2945.75(A)(2). He claims that voluntary manslaughter and negligent homicide are both lesser-included offenses of murder. He notes that his verdict forms for voluntary manslaughter did not include an offense level or a citation to a revised code section. Thus, he argues that he could only have been convicted of negligent homicide, the most inferior form of murder.

**{¶33}** "R.C. 2945.75(A)(2) applies under circumstances where 'the presence of one or more additional elements makes an offense one of more serious degree . . . .'" *State v. Binford*, 2016-Ohio-7678, ¶ 17 (9th Dist.), quoting R.C. 2945.75(A). Voluntary manslaughter and negligent homicide are entirely different offenses, not a singular offense of varying degrees. *See* R.C. 2903.03 and 2903.05. Even if R.C. 2945.75(A)(2) somehow applied here, however, the record reflects that Mr. Kinard never objected to his verdict forms. "Because he failed to raise an objection at the trial-court level, he forfeited all but plain error on appeal." *State v. Mays*, 2024-Ohio-4616, ¶ 26. Mr. Kinard has not argued plain error on appeal, and this Court will not construct an argument on his behalf. *See State v. Herring*, 2023-Ohio-4851, ¶ 38 (9th Dist.).

**{¶34}** Third, Mr. Kinard argues that, as a matter of law, a five-year drive-by shooting specification cannot attach to a conviction for voluntary manslaughter. According to Mr. Kinard, the two are inconsistent because voluntary manslaughter occurs when an act has been incited by adequate provocation while a drive-by shooting specification requires proof of a purposeful or knowing act. Mr. Kinard's argument overlooks the fact that a person can only be convicted of voluntary manslaughter if, after being provoked, he "*knowingly* cause[d] the death of another . . . ." (Emphasis added.) R.C. 2903.03(A). Voluntary manslaughter is a "a felony that includes, as an essential element, purposely or knowingly causing . . . the death of . . . another . . . ." R.C. 2941.146(A). Accordingly, as a matter of law, the crime can support a five-year drive-by shooting specification. *See id.* (setting forth requirements for imposition of drive-by shooting specification). Mr. Kinard's argument to the contrary lacks merit.

**{¶35}** Finally, Mr. Kinard argues that his conviction for discharging a firearm on a prohibited premises must be vacated because the trial court failed to issue a self-defense instruction on that count. Assuming without deciding that Mr. Kinard's argument is one properly raised

through a sufficiency of the evidence challenge, the record reflects that he failed to preserve it for review. The prosecutor told the trial court that "all parties agreed that self-defense does not apply to Count Four, which is Discharge of Firearms on a Prohibited Premises." Mr. Kinard did not dispute that statement. Nor did he object when the trial court instructed the jury that self-defense did not apply to the offense of discharging a firearm on a prohibited premises. By failing to do so, he forfeited his argument for appeal. *See Herring* at ¶ 38. Mr. Kinard has not argued plain error, and this Court will not construct an argument on his behalf. *See id.* His third assignment of error is overruled.

## ASSIGNMENT OF ERROR FOUR

[MR. KINARD] RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL[.]

{¶36} In his fourth assignment of error, Mr. Kinard argues that he received ineffective assistance of counsel. We disagree.

{¶37} To prevail on a claim of ineffective assistance of counsel, Mr. Kinard must establish (1) his counsel's performance was deficient to the extent that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[,]" and (2) but for his counsel's deficient performance, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficient performance is one that "fall[s] below an objective standard of reasonable representation[.]" *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. A court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). In addition, to establish prejudice, Mr. Kinard must show that there existed "a reasonable probability that, but for counsel's

errors, the outcome of the proceeding would have been different." *State v. Sowell*, 2016-Ohio-8025, ¶ 138.

**{¶38}** Both prongs under *Strickland* must be established to support an ineffective assistance of counsel claim. *Strickland* at 687. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.

**{¶39}** Mr. Kinard argues that he received ineffective assistance of counsel because his attorney did not request a self-defense instruction on his count of discharging a firearm on a prohibited premises. He argues that the jury found the shooting at least partially justified because it convicted him of a lesser-included offense rather than murder. According to Mr. Kinard, his counsel's failure to request the additional self-defense instruction affected the outcome of his trial.

**{¶40}** Assuming without deciding that Mr. Kinard's attorney ought to have requested a self-defense instruction on his count of discharging a firearm on a prohibited premises, Mr. Kinard has not shown that there is a reasonable probability the error affected the outcome of the proceedings. *See Sowell*, 2016-Ohio-8025, at ¶ 138. The jury rejected his self-defense claim on each of his remaining counts, and we have already determined that its verdicts are not against the manifest weight of the evidence. The evidence supports the conclusion that Mr. Kinard (1) lacked a bona fide reason to believe he was in imminent danger of great bodily harm and had the means to escape without shooting the decedent, and (2) violated a duty to retreat or avoid the danger. *See* Discussion of Assignment of Error II, *supra*. His count of discharging a firearm on a prohibited premises stemmed from the same incident, as he shot the decedent from his car on the highway. Mr. Kinard's argument that the jury would have viewed the same evidence differently if extended to that count is entirely speculative. Because "[i]neffective assistance cannot be established

through speculation about the prejudicial effects of counsel's performance[,]" we must conclude that his argument lacks merit. *State v. Herman*, 2024-Ohio-541, ¶ 5 (9th Dist.). His fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR FIVE

[MR. KINARD] WAS SENTENCED CONTRARY TO LAW[.]

**{¶41}** In his fifth assignment of error, Mr. Kinard argues that his sentence is contrary to law. Specifically, he argues that his five-year drive-by shooting specifications should have merged with one another. For the following reasons, we agree that his sentence is contrary to law.

**{¶42}** "[A]n appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 2016-Ohio-1002, ¶ 1. *See also* R.C. 2953.08(G)(2). R.C. 2929.14(B)(1)(c)(i) provides as follows:

> Except as provided in division (B)(1)(e) of this section, if an offender who is convicted of . . . a felony that includes, as an essential element, purposely or knowingly causing or attempting to cause the death of or physical harm to another, also is convicted of . . . a specification of the type described in [R.C. 2941.146(A)] that charges the offender with committing the offense by discharging a firearm from a motor vehicle . . . , the court, after imposing a prison term on the offender for the violation of . . . the [] felony offense . . ., shall impose an additional prison term of five years upon the offender . . . .

Importantly, R.C. 2929.14(B)(1)(c)(iii) provides that "[a] court shall not impose more than one additional prison term on an offender under division (B)(1)(c) of this section for felonies committed as part of the same act or transaction."

**{¶43}** Mr. Kinard was found guilty of two counts of voluntary manslaughter, felonious assault, and discharging a firearm on a prohibited premises. His counts of voluntary manslaughter and felonious assault all carried a five-year drive-by shooting specification under R.C. 2941.146. Additionally, all four of his counts carried a three-year firearm specification under R.C.

2941.145(A). The trial court ultimately sentenced him on two of his specifications: (1) the five-year specification linked to one of his voluntary manslaughter counts, and (2) the five-year specification linked to his felonious assault count. It ordered those terms to run consecutively with one another for a total of ten years in prison on the specifications. It merged Mr. Kinard's remaining specifications. Mr. Kinard objected to his sentence and asked the court to merge his five-year specifications. The court overruled his objection after the State cited R.C. 2929.14(B)(1)(g).

{¶44} R.C. 2929.14(B)(1)(g) requires a court to impose a prison term for each of the two most serious specifications for which an offender is convicted. Yet, the statute only applies to specifications "of the type described under division (B)(1)(a) of this section . . . ." R.C. 2929.14(B)(1)(g). Five-year drive-by shooting specifications are not one of the types of specifications described in R.C. 2929.14(B)(1)(a). *See* R.C. 2929.14(B)(1)(a). Instead, five-year drive-by shooting specifications are governed by R.C. 2929.14(B)(1)(c). As noted, that division forbids a trial court from imposing more than one five-year term "for felonies committed as part of the same act or transaction." R.C. 2929.14(B)(1)(c)(iii).

{¶45} Neither Mr. Kinard nor the State addressed R.C. 2929.14(B)(1)(c)(iii) in the lower court or their appellate briefs. Following oral argument, this Court requested supplemental briefing on the issue of whether that division prohibited the imposition of consecutive prison terms on Mr. Kinard's drive-by shooting specifications. Both parties responded to our order. Mr. Kinard argues that R.C. 2929.14(B)(1)(c)(iii) prohibits the imposition of consecutive, five-year prison terms because his felonies were committed as part of the same act or transaction. The State's response is two-fold. First, it argues that R.C. 2929.14(B)(1)(g) still applies in this case because Mr. Kinard was found guilty of three-year firearm specifications in addition to the five-year

specifications. Because R.C. 2929.14(B)(1)(g) requires a defendant be sentenced on his "two most serious specifications" and, in this case, those specifications happen to be the drive-by specifications, the State argues the ten-year sentence is appropriate. Alternatively, the State asks this Court to modify Mr. Kinard's sentence on appeal. It asks us to vacate one of the five-year sentences, impose sentence on two of Mr. Kinard's three-year firearm specifications, and run the three terms consecutively for a total of eleven years in prison on the firearm specifications.

{¶46} Upon review, we reject the State's argument that Mr. Kinard's drive-by specifications were subject to stacking under R.C. 2929.14(B)(1)(g). The plain language of division (B)(1)(g) negates that interpretation. It provides that a sentencing court "shall impose on the offender *the prison term specified under division (B)(1)(a) of this section* for each of the two most serious specifications of which the offender is convicted . . . ." (Emphasis added.). Drive-by specifications are not governed by division (B)(1)(a), so that division does not set forth a prison term for them. Instead, division (B)(1)(c) governs drive-by specifications. It specifies that the prison term for a drive-by specification is five years. R.C. 2929.14(B)(1)(c)(i). It also explicitly prohibits the imposition of more than one five-year prison term "for felonies committed as part of the same act or transaction." R.C. 2929.14(B)(1)(c)(iii). There is no dispute that Mr. Kinard's convictions for voluntary manslaughter and felonious assault were committed as part of the same act or transaction. Accordingly, the trial court could not impose more than one five-year prison term on him for his violations of R.C. 2941.146(A). R.C. 2929.14(B)(1)(c)(iii). *Accord State v. Moore*, 2023-Ohio-4445, ¶ 27-29 (2d Dist.); *State v. Lewis*, 2019-Ohio-3929, ¶ 46-48 (6th Dist.). That aspect of its sentencing decision is contrary to law.

{¶47} To the extent the State asks this Court to correct additional errors in Mr. Kinard's sentence and modify it to increase his total sentence, we note that the State has not filed a cross-

appeal. "[A]n appellate court may not alter a judgment to benefit a nonappealing party." *Greenlaw v. United States*, 554 U.S. 237, 244 (2008). Because the State has not sought review of any additional sentencing errors, we are unable to correct them. *See id.*; *State v. Harmon*, 2013-Ohio-1769, ¶ 14 (9th Dist.). Mr. Kinard's sentence on his specifications is vacated as it is contrary to law. This matter is remanded to the trial court for resentencing on one of the drive-by shooting specifications. Mr. Kinard's assignment of error is sustained on that basis.

III.

**{¶48}** Mr. Kinard's fifth assignment of error is sustained for the reasons outlined above. His remaining assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed in part, reversed in part, and the cause is remanded for further proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

SCOT STEVENSON
FOR THE COURT

HENSAL, J.
SUTTON, J.
CONCUR.

APPEARANCES:

WESLEY C. BUCHANAN, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.